**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**
**Bankruptcy Appeal**
_____

**In Re:  VALLEY MEDIA, INC., Valley**
**Bankruptcy Case No. 01-11353**
_____

**COMMONWEALTH OF MASSACHUSETTS**
**DEPARTMENT OF REVENUE, Creditor/Appellant**
**v.**
**VALLEY MEDIA, INC., Debtor/Appellee**
**Civil Action No. 05-179 (JJF)**
_____

# BRIEF OF APPELLANT
# COMMONWEALTH OF MASSACHUSETTS
_____

Thomas F. Reilly, Atty. General
Kevin Brown, Special Asst. Atty. Gen.
Jeffrey S. Ogilvie (MA Bar No. 377815)
Massachusetts Department of Revenue
100 Cambridge Street, 7th Floor
Boston, MA 02114
617-626-3223
    *Counsel for Appellant*

Stuart B. Drowos (DE Bar No. 427)
Deputy Attorney General
Div. of Revenue, Department of Finance
Carvel Bldg., 820 French Street, 8th Floor
Wilmington, DE 19801
302-577-8660
    *Local associated counsel for Appellant*

Date: June 17, 2005

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

STATEMENT OF NATURE AND STAGE OF PROCEEDING ............................................. 1

SUMMARY OF ARGUMENT .............................................................................................. 3

STATEMENT OF FACTS .................................................................................................... 3

ARGUMENT ....................................................................................................................... 4

    A.    The Validity Of the Commonwealth's Claim Is Determined
           Under Applicable Non-Bankruptcy Law. ................................................... 4

    B.    The Drop Shipment Sales Are Subject To The Massachusetts
           Sales Tax. ................................................................................................... 5

    C.    The "Risk Of Loss" Provision In The Valley-Internet Vendor
           Agreements Has No Substantive Effect. ..................................................... 9

    D.    The Connecticut Supreme Court's Decision In *Steelcase* Is
           Inapplicable To The Present Case. ............................................................. 12

    E.    The Commonwealth's Department Of Revenue Has Interpreted
           The Sales Tax Statute As Applicable To Drop Shipment
           Transactions. ............................................................................................. 15

    CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

## Cases

*Boston Tow Boat Company v. State Tax Comm'n,* 366 Mass. 456, 420 N.E. 2d 298 (1981)...................................................................................................... 5

*Circuit City Stores v. Commissioner of Revenue*, 439 Mass. 629, 790 N.E.2d 636 (2003)...................................................................................................... 9, 10, 12

*Clark Franklin Press Corp. v. State Tax Comm'n,* 364 Mass. 598, 307 N.E.2d 566 (1974)...................................................................................................... 12

*Commissioner of Revenue v. Jafra Cosmetics,* 433 Mass. 255 (2001)...................................... 12

*D.H. Holmes Co. v. McNamara,* 486 U.S. 24, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988)...................................................................................................... 10

*Globe Newspaper Co. v. Boston Retirement Bd.,* 388 Mass. 427, 446 N.E. 2d 1051 (1983)...................................................................................................... 14

*Grogan v. Gardner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991)................................. 4

*John B. Frey Co. v. S. Silk, Inc.,* 245 Mass. 534, 140 N.E. 259 (1923)...................................... 11

*Koch v. Commissioner of Revenue*, 416 Mass. 540, 624 N.E. 2d 91 (1993)................................. 5

*Levy v. Radkay, 233 Mass. 29, 123 N.E. 97 (1919)* ..................................................... 11

*Lord v. Edwards*, 148 Mass. 476, 20 N.E. 161 (1889) ................................................... 10

*Raleigh v. Illinois Department of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000)...................................................................................... 5

*Steelcase, Inc. v. Crystal,* 238 Conn. 571, 680 A.2d 289 (1995).................................................. 12

*Terry v. Kemper,* 390 Mass. 465, 456 N.E. 2d 465 (1983)........................................................ 8

*Travenol Laboratories, Inc. v. Zotal*, Ltd. 394 Mass. 95, 474 N.E. 2d 1070 (1985)...................................................................................................... 10

*Udall v. Tallman*, 380 U.S. 1, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965)................................. 15, 16

*Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156 (1946)................................. 4

*Waltham Door & Window Co. v. S . A. Woods Machine Co.,* 342 Mass. 335, 173
  N.E. 2d 265 (1961) .................................................................................................. 11

**Federal Statutes**

11 U.S.C. §§ 101 .......................................................................................................... 1

**State Statutes**

Conn. General Statutes § 12-407 (3) ........................................................................ 13

Mass. G.L. c. 64H § 1 ..................................................................................... 6, 14, 17

Mass. G.L. c. 64H, § 2 ................................................................................................. 5

Mass. G.L. c. 106, § 2-308............................................................................................ 7

**State Regulations**

*Department of Revenue Directive 86-21 (August 20, 1986)*................................. 15, 16

*Letter Ruling 79-43 (October 25, 1979)* ................................................................... 15

*Letter Ruling 82-7 (January 4, 1982)* ....................................................................... 16

*Letter Ruling 83-97 (November 3, 1983)*.................................................................. 16

*Letter Ruling 84-37 (May 16, 1984)* ........................................................................ 16

*Technical Information Release 04-26 (October 21, 2004)* ........................................ 17

**Other Authorities**

Singer, "Sutherland, Statutes and Statutory Construction" (6th ed.,West 2000).......................... 14

## STATEMENT OF NATURE AND STAGE OF PROCEEDING

The Bankruptcy Court sustained an objection by debtor-appellee, Valley Media, Inc. ("Valley"), to the $1.45 million "drop shipment" sales tax claim of the creditor-appellant, the Commonwealth of Massachusetts Department of Revenue ("Commonwealth"). On appeal, the Commonwealth asserts that Valley is liable for the Massachusetts sales tax on the products it sold and shipped to customers in Massachusetts, and that the Bankruptcy Court erred in holding Valley insulated itself from the sales tax by completing the sales in California.[1]

On November 20, 2001 (the "Petition Date"), Valley filed a voluntary petition commencing the above-captioned case under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*., (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court).[2]

On April 7, 2003, the Commonwealth filed a proof of claim with the Bankruptcy Court for unpaid Massachusetts taxes that included the claim for sales tax at issue in this appeal.[3]  On or about March 14, 2003, Valley filed its Fifth Omnibus (Substantive) Objection To Claims ("Objection")[4], seeking to have the sales tax portion of the claim disallowed.  On or about May

---

[1]    In the Bankruptcy Court the Commonwealth argued, in the alternative, that the use tax was applicable.  This contention is not being pursued on appeal.

[2]    *See* Bankruptcy Court Docket Entries.

[3]    Proof of claim, Vol. 1, Record on Appeal, Tab 1.  The two volumes of the Record on Appeal will be referred to, respectively, as "I-R" and "II-R," and the tabs in each volume will be referred to by number [*e.g.,* I-R-1 is the Commonwealth's proof of claim].

[4]    Valley's Fifth Omnibus (Substantive) Objection To Claims, I-R-2.

14, 2003, the Commonwealth filed a timely opposition[5] to Valley's Objection.

On December 3, 2003, the Commonwealth and Valley filed a Stipulation[6] as to all relevant and material facts concerning the Commonwealth's tax claim, including the sales tax portion of the claim.

On December 29, 2004, the Bankruptcy Court (Hon. Peter J. Walsh, Bankruptcy Judge) entered a memorandum opinion[7] sustaining Valley's objection to the sales tax, and on January 13, 2005, the Bankruptcy Court entered an order[8] disallowing the sales tax claim. The time for the Commonwealth to file a notice of appeal was enlarged to February 14, 2005.[9] On February 9, 2005, the Commonwealth filed a timely notice of appeal.[10]

On March 28, 2005, the case was referred to mediation. By letter dated April 12, 2005, the mediator notified the Court that the matter was not resolved through mediation. On June 3, 2005, the Court entered an order establishing a briefing schedule.

---

[5]    Commonwealth's Opposition, I-R-3.

[6]    Stipulation of Facts, II-R-A, B, C (1)-(23), referred to herein as ("Stip.").

[7]    Memorandum Opinion, I-R-16.

[8]    Order Granting Fifth Omnibus Objection, I-R-17.

[9]    Order, I-R-19.

[10]    Notice of Appeal, I-R-20.

## SUMMARY OF ARGUMENT

The Massachusetts sales tax statue applies expressly to Valley's drop shipment transaction. The "risk-of-loss" covenants in the agreements between Valley and the Internet Providers do not override the sales tax statute, and the Bankruptcy Court erred when it gave controlling weight to the Uniform Commercial Code. The Connecticut sales tax statute omits the key provisions found in the Massachusetts statute, and the Bankruptcy Court incorrectly relied on the Connecticut decision applying that statute. The Department of Revenue has interpreted the sales tax statute as applicable to Valley's drop shipments since 1979. This Court should therefore reverse the Bankruptcy Court's order.

## STATEMENT OF FACTS

Valley's principal place of business was in Woodland, California.[11] Valley also maintained a warehouse in Massachusetts, was registered in Massachusetts for sales/use taxes, and filed all required sales/use tax returns.[12] The Commonwealth's sales tax claim is attributable to the period from January 1, 1997 to December 31, 2000.[13]

Valley entered into "Order Fulfillment Agreements" with twenty-six entities ("Internet Vendors") that had no physical presence in Massachusetts.[14] The Internet Vendors took orders for Valley's products over the internet from customers in Massachusetts, and passed the orders

---

[11]    Stip. ¶ 4, II-R-A.

[12]    Stip. ¶5, II-R-A.

[13]    Stip. ¶ 1, II-R-A.

[14]    Stip. ¶¶ 28, 35, 36, 38-61, II-R-A.

along to Valley in California; Valley then filled the orders by mailing the product to

Massachusetts customers from California.[15]  This transaction is known as a "drop shipment.[16]

The Commonwealth's sales tax claim is based on an audit of Valley's sales, which

concluded that the drop shipment transactions were subject to the Massachusetts 5% sales tax

and that Valley was required to, but had not, collected and remitted the sales tax from the

Massachusetts purchasers.[17]  The amount of sales tax (exclusive of interest and penalty)

attributable to the drop shipments is $1,462,703.[18]


**ARGUMENT**


**A.    The Validity Of the Commonwealth's Claim Is Determined Under Applicable Non-Bankruptcy Law.**

"The validity of a creditor's claim is determined by rules of state law. *See Vanston*

*Bondholders Protective Committee v. Green*, 329 U.S. 156, 161 (1946)."  *Grogan v. Gardner,*

498 U.S. 279, 283, 111 S.Ct. 654, 657, 112 L.Ed.2d 755, 763 (1991).  This precept is

particularly applicable in the present case, since the sales tax claim is based upon the

---

[15]      Stip. ¶¶ 29, 30, 31,33, II-R-A.

[16]      Stip. ¶ 32, II-R-A.

[17]      Stip. ¶¶ 1,35, II-R-A.

[18]      Stip. ¶¶67,70, II-R-A.  This amount is the difference between the amounts of sales tax (exclusive of interest) that the parties agreed was due if the drop shipment tax claim was either allowed ($1,540,448) or disallowed ($77,746).  The Bankruptcy Court order disallowed the drop shipment tax claim, and allowed the remaining portion of the Commonwealth's claim in the amount of $102,182, representing the agreed tax amount of $77,746 plus interest. Order, I-R-17.

Massachusetts sales tax statute.  Pursuant to *Raleigh v. Illinois Department of Revenue*, 530

U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), the Valley bears the burden of proof in

challenging the validity of the Commonwealth's Claim. *See, e.g., Koch v. Commissioner of*

*Revenue*, 416 Mass. 540, 624 N.E. 2d 91 (1993) (burden of proof to sustain objection to tax

rests on taxpayer.)


**B.      The Drop Shipment Sales Are Subject To The Massachusetts Sales Tax.**

The sales tax is imposed by Section 2 of the Massachusetts sales tax statute, which

provides:

> An excise is hereby imposed upon sales at retail in the commonwealth, by any
> vendor, of tangible personal property or of services performed in the
> commonwealth at the rate of five percent of the gross receipts of the vendor from
> all such sales of such property or services, except as otherwise provided in this
> chapter. The excise shall be paid by the vendor to the commissioner at the time
> provided for filing the return required by section sixteen of chapter sixty-two C.

Mass. G.L. c. 64H, § 2.

The Massachusetts Supreme Judicial Court has explained that the sales tax and the use

tax are "complementary components of a unitary taxing program created to reach all

transactions (unless specifically exempted [citation omitted]) in which tangible personal

property is sold inside or outside the Commonwealth for storage, use, or other consumption

within the Commonwealth."  *Boston Tow Boat Company v. State Tax Comm'n,* 366 Mass. 456,

466, 420 N.E. 2d 298 (1981).

Section 1 of the statute contains a definition of the terms "sale at retail" and "retail sale,"

the transactions that as noted in *Boston Tow Boat* are made subject to the sales tax.  The second

sentence of this definition states:

>The <u>delivery in the commonwealth</u> of tangible personal property <u>by an owner or former owner</u> thereof, or <u>by a factor, or agent of such owner, former owner or factor</u>, if the delivery is to a consumer <u>or to a person for redelivery to a consumer</u>, pursuant to a retail sale made by a retailer not engaged in business in the commonwealth, <u>is a retail sale</u> in the commonwealth <u>by the person making the delivery.</u>

Mass. G.L. c. 64H § 1 (emphasis supplied).

The term "sale" and "selling" are also defined:

>"Sale" and "selling" include…any <u>transfer of</u> title or <u>possession</u>, or both…of tangible personal property…for a consideration, in any manner or by any means whatsoever.

Mass. G.L. c. 64H § 1 (emphasis supplied)

Here, as the Bankruptcy Court recognized, the Internet Vendors and Valley agreed that Valley would act as the Internet Vendor's agent to cause delivery of the Valley's product to be made to the buyer's home in Massachusetts.  The Order Fulfillment Agreements between Valley and the Internet Vendors clearly set forth and reflect this agency relationship, as shown by the agreement with BigStar Entertainment, Inc.[19]

The Agreement states, "<u>Retailer wishes to obtain</u> Product (as defined below) from Valley as well as <u>direct-to-consumer order fulfillment services from i.FILL [Valley] to fulfill Product orders</u> placed by consumers on the Site." [20]   Valley's agency relationship with the Internet Vendor is spelled out in detail as follows:

---

[19]     Agreement between Valley and BigStar Entertainment, Inc., II-R-C(3).  The material terms of all the Agreements are the same as this one.

[20]     Agreement, II-R-C-3, p. 1, ¶C.

Fulfillment Service.    i.FILL [Valley] will provide direct-to-customer fulfillment services for Retailer as described herein.    Retailer will build and maintain the Site and will develop a computer and customer service interface for the purposes of conducting small order Product transactions from the Site. Retailer will collect all Product orders received by the Site and may forward such orders as it deems appropriate to Valley's Bulletin Board System or FTP Server via EDI [defined to mean "electronic data interchange" at Agreement, ¶ 1.9].  For each such order, i.FILL [Valley] will pick the Product specified in the order from its inventory, pack such Product for mailing and ship such Product directly to the consumer who has placed the order. [emphasis supplied] [21]

Order Fulfillment:  Retailers will provide that each Product order forwarded to i.FILL [Valley] by Retailer is clearly identified as a Priority Order or a Standard Order.  i.FILL [Valley] will fulfill product orders forwarded to i.FILL [Valley] by Retailer….[emphasis supplied] [22]

The Bankruptcy Court concluded that delivery of the product occurred in California

F.O.B. Valley's shipping facility; therefore, the product was not delivered in Massachusetts and

no taxable sale at retail occurred in Massachusetts.  This analysis erroneously forces the sales

tax provisions into the confines of the Uniform Commercial Code sale provisions.  Thus, the

Bankruptcy Court relies on the Massachusetts version of the UCC (Mass. G.L. c. 106, § 2-308)

to make the point that "parties [can] agree where delivery of shipments will occur."[23]

This reasoning appears to assume the Commonwealth disputes that Valley actually sold

the product to the Internet Vendors, and overlooks the express sales tax provisions quoted

above.[24]  Even if, as between Valley and the Internet Providers and for the purposes of the UCC,

---

[21]      Agreement, II-R-C-3, p.4, ¶2.

[22]      Agreement, II-R-C-3, p. 7, ¶8.

[23]      Memorandum Opinion, I-R-16, p. 5.

[24]      As demonstrated by the Commonwealth's long-standing interpretation of the sales tax statute, discussed below, the Commonwealth does not take such a position.

the delivery and sale occurred in California, yet for purposes of the sales tax statute the terms "sale" and "selling" expressly "include…<u>any</u> <u>transfer of</u> …<u>possession</u>."   The Bankruptcy Court acknowledges, but ignores the <u>sales tax</u> import of, the facts that actual possession of the drop shipments was transferred to the Massachusetts customers by Valley; that Valley was the "former owner" of the product; that the delivery was accomplished by Valley as "the agent" of the owner; and that Valley, the former owner, delivered the product in Massachusetts by transferring possession to the Massachusetts consumers, as agent of and pursuant to a retail sale by the Internet Vendors.

> [E]nactment of the U.C.C. in Massachusetts does not necessarily require us to ignore well-settled principles of agency law.

*Terry v. Kemper,* 390 Mass. 465, 456 N.E. 2d 465, 467 (1983).

Likewise, even if "delivery" and sale of the product was made F.O.B. in California under UCC principles, the drop shipment transaction is swept into the sale tax statute by the key sales tax phrase "<u>or to a person for redelivery to a consumer</u>."   By narrowly concentrating its analysis on the "delivery" provisions of the Uniform Commercial Code, the Bankruptcy Court failed to give any effect to the obvious fact that the product never moved as between Valley and the Internet Vendor, and remained in Valley's warehouse until Valley shipped it.   Even if the product was "delivered" to the Internet Vendor, Valley retained possession for the sole purpose of <u>redelivery</u> to the Massachusetts consumer.   This precise series of event falls within the sales tax "redelivery" phrase quoted above, and "the person making the delivery" -- *i.e,* Valley in this case -- is responsible for the sales tax.

The drop-shipment transactions fall within the sales tax definition of a taxable retail sale, and Valley is liable for the tax.   The Bankruptcy court erred in reaching a contrary conclusion.

8

C.    **The "Risk Of Loss" Provision In The Valley-Internet Vendor Agreements Has No Substantive Effect.**

The Bankruptcy Court erroneously relied, in part, on the risk-of-loss provision in the Agreement.[25]    In *Circuit City Stores v. Commissioner of Revenue*, 439 Mass. 629, 790 N.E.2d 636 (2003), the court squarely rejected reliance on a contractual risk-of-loss provision to avoid the impact of the sales tax.  Circuit City allowed customers to pay for merchandise at a location in Massachusetts, and then take possession of the merchandise at a location in New Hampshire (which does not impose a sales tax), while purporting to assume the risk of loss until the customer took possession.  The court held untenable Circuit City's contention that its "assumption of the risk of loss" rendered the transaction not taxable:

> This argument relies, in part, on Circuit City's assumption of the risk of loss on the purchased merchandise until the time that it is handed over to the customer. Section 2-509 of the UCC, however, bases risk of loss on the physical location of the goods, irrespective of whether title has already passed to the buyer.  As a merchant subject to art. 2 of the UCC, Circuit City cannot transfer the risk of loss until the customer's actual receipt of the goods, even though full payment has been made and the buyer has been notified that the goods are at his disposal….[citation omitted]

*Id.,* 790 N.E. 2d at 642.

As in *Circuit City*, the risk-of loss provision is not controlling here. Delivery of possession of the product to the Massachusetts consumer buyer, and completion of the drop shipment transaction, does not occur until the product reaches Massachusetts. "'[D]elivery is the

---

[25]    10.3.  <u>Risk of Loss.</u> All shipments made by i.FILL or Valley under this Agreement will be F.O.B. Valley's shipping facility.  Title and risk of loss with respect to all such shipments will pass to Retailer upon delivery of the products to the carrier at the point of shipment….  Agreement, II-R-C-3, p. 9, ¶ 10.3.

most significant stage of the sales transaction.'" *Travenol Laboratories, Inc. v. Zotal*, Ltd. 394 Mass. 95, 474 N.E. 2d 1070, 1073 (1985).

Nor can Valley assert that its act of mailing the product somehow severs its connection with Massachusetts. In *D.H. Holmes Co. v. McNamara*, 486 U.S. 24, 32, 108 S.Ct. 1619, 100 L.Ed.2d 21 (1988) the Supreme Court concluded that it "verged on the nonsensical" to claim that the taxpayer did not have control over items it directed the United State Postal Service to deliver to residents of the taxing state.

> "It is a settled principle of our taxation jurisprudence that tax statutes are 'to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form…'" In construing other terms of our tax statutes, we have "reject[ed] a technical construction … that would enable vendors to escape sales and use tax liability by artful drafting." The transactions here involved sales to customers who were within Massachusetts at the time of purchase….The sales occurred in Massachusetts and were taxable here.

*Circuit City,* 790 N.E.2d at 644 (citations omitted.)

As a matter of substance, Valley utilized the Internet Vendors to take orders for its product, and then fulfilled the orders by shipping its product to Massachusetts customers. The Bankruptcy Court failed to acknowledge that this is a three-party transaction, not the type of two-party transaction contemplated by the Uniform Commercial Code. As in *Circuit City*, the "risk-of-loss" provisions as between two of the three parties are not allowed to defeat application of the sales tax.

Furthermore, the "risk-of-loss" provision in the Agreements, when read together with other provisions of the Agreements, does not accomplish a true allocation of the real and actual potential for loss or damage to property during the shipping process, as required by Massachusetts law. *Lord v. Edwards*, 148 Mass. 476, 20 N.E. 161 (1889) (goods exposed to the peril of the sea); *Levy v. Radkay*, 233 Mass. 29, 123 N.E. 97 (1919) (good destroyed while in

10

possession of carrier); *John B. Frey Co. v. S. Silk, Inc.,* 245 Mass. 534, 140 N.E. 259 (1923) (beets became unmerchantable during shipping); *Waltham Door & Window Co. v. S. A. Woods Machine Co.,* 342 Mass. 335, 173 N.E. 2d 265 (1961) (risk of loss shifted when machine loaded on truck).

The Bankruptcy Court's reasoning gives no effect to this "loss during shipping" requirement. Referring again to the Agreement with BigStar Entertainment, Inc.:[26]

a.    ¶11.2.5(b) provides that Debtor will not charge Internet Vendors for any Product that is lost in shipping;

b.    ¶10.3, the "risk of loss" provision itself, provides:

With respect to any Shipping Damaged Product, i.FILL will assist Retailer in filing a claim with the carrier <u>and will credit Retailer any amounts received or credited to i.FILL or Valley</u> in connection with such claim.

and

c.    ¶10.1 contains a requirement, imposed by Valley, that the Internet Vendors must only use the methods of shipment specified by Debtor, and ¶10.2 provides that Valley will pay the shipping costs and that the Internet Vendor will reimburse Debtor for these costs.

These provisions directly contradict the "risk-of-loss" term, since they completely relieve the Internet Vendor of any risk of loss in shipping. The real contractual risk of loss remains on the Valley at all times. The Internet Vendor can rest assured that it will not suffer any loss in shipping, and that it is completely protected against loss until the product is safely delivered to the Massachusetts consumer.

---

[26]    Agreement between Valley and BigStar Entertainment, Inc., II-R-C(3).

11

This is an example of "artful drafting" that Massachusetts courts condemn. "It is a settled principle of our taxation jurisprudence that tax statutes are 'to be construed as imposing taxes with respect to matters of substance and not with respect to mere matters of form.' In construing other terms of our tax statutes, we have "rejected a technical construction . . . that would permit vendors to escape sales and use tax liability by artful drafting." *Circuit City Stores, Inc.,* 439 Mass. at 641, 790 N.E. 2d at 644. "We refuse to believe that so transparent an escape device from the sales tax was intended by the Legislature." *Clark Franklin Press Corp. v. State Tax Comm'n,* 364 Mass. 598, 603, 307 N.E. 2d 566 (1974); *see also Commissioner of Revenue v. Jafra Cosmetics,* 433 Mass. 255, 261-262 (2001). The Bankruptcy Court erred in giving effect to the risk-of-loss provision.

**D.    The Connecticut Supreme Court's Decision In *Steelcase* Is Inapplicable To The Present Case.**

The Bankruptcy Court also erroneously relied on the reasoning of *Steelcase, Inc. v. Crystal,* 238 Conn. 571, 680 A.2d 289 (1995). The facts in *Steelcase* and the Connecticut sales tax statute differ significantly from the present case.

In *Steelcase,* the court adopted the argument that the sale did not occur inside Connecticut since delivery of the goods occurred outside Connecticut, and so the transaction was not subject to the Connecticut sales tax. But *Steelcase* involved only five sales transactions with five different retailers, and the court noted that "[t]he retailers were responsible for making all necessary arrangements for unloading the goods from the common carrier at the customers' locations.' Steelcase [the vendor/supplier] made no such arrangements." *Id.*, 680 A.2d at 291 (emphasis supplied).

12

Here, thousands of individual sales transactions occurred involving twenty-six Internet Vendors, and all aspects of delivery were handled by Valley.  Unlike Steelcase, the Connecticut supplier, Valley undertook to accomplish delivery of the product directly to the Massachusetts consumer with no further participation by the Internet Vendors.  The Internet Vendors relied on Valley as their agent to redeliver possession of the product into the hands of the Massachusetts consumer.  The Commonwealth submits that the facts in *Steelcase* are so different from this case that it cannot be relied on as precedent here.

More importantly, the Connecticut statute differs from the Massachusetts statute by omitting any reference to an agent or former owner and to redelivery to the consumer.  This is apparent when the two statutes are read together, with the location of the omitted phrases marked: [27]

> The delivery in this state of tangible personal property by an owner or former owner thereof or by a factor, [***] if the delivery is to a consumer [***] pursuant to a retail sale made by a retailer not engaged in business in this state, is a retail sale in this state by the person making the delivery. He shall include the retail selling price of the property in his gross receipts.

Conn. General Statutes § 12-407 (3)

> The delivery in the commonwealth of tangible personal property by an owner or former owner thereof, or by a factor, <u>or agent of such owner, former owner or</u>

---

[27]    The first sentence of the Connecticut statute is not reproduced above; it states:

'Retail sale' or 'sale at retail' means and includes a sale for any purpose other than resale in the regular course of business of tangible personal property or a transfer for a consideration of the occupancy of any room or rooms in a hotel or lodging house for a period of thirty consecutive calendar days or less, or the rendering of any service described in any of the subdivisions of subsection (2) of this section.

Conn. General Statutes § 12-407 (3)

> <u>factor</u>, if the delivery is to a consumer <u>or to a person for redelivery to a</u> <u>consumer,</u> pursuant to a retail sale made by a retailer not engaged in business in the commonwealth, is a retail sale in the commonwealth by the person making the delivery.

Mass. G.L. c. 64H § 1

As a leading authority points out, "[e]nactment of legislation which is different from that…in other states for the same subject manifests a legislative purpose to accomplish different legal results that those which obtain in other states." 2B Singer, "Sutherland, Statutes and Statutory Construction," § 51.06, p 264 (6th ed.,West 2000).  This principle would be applied in this case by Massachusetts courts to distinguish the Connecticut statute.  In *Globe Newspaper Co. v. Boston Retirement Bd.,* 388 Mass. 427, 446 N.E. 2d 1051 (1983), comparing the Massachusetts and federal statutes, the court said:

> Such comparison gives little solace to the Globe's cause. If the language of a statute differs in material respects from a previously enacted analogous Federal statute which the Legislature appears to have considered, a decision to reject the legal standards embodied or implicit in the language of the Federal statute may be inferred…. The Massachusetts exemption…differs in several material respects.

*Id.* at 432-33.

The provisions that are present in the Massachusetts sales tax statute, but missing from the Connecticut statute, apply to Valley.  Valley was the agent of the Internet Vendor in shipping the product to Massachusetts customers, and the product was being "redelivered" to Massachusetts under the Bankruptcy Courts view that the initial "delivery" to the Internet Vendors took place in California.  The Bankruptcy Court should not have given any weight to *Steelcase,* and should not have adopted the *Steelcase* holding.

E.    **The Commonwealth's Department Of Revenue Has Interpreted The Sales Tax Statute As Applicable To Drop Shipment Transactions.**

"When faced with a problem of statutory construction, this court shows great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman*, 380 U.S. 1, 16, 85 S. Ct. 792, 13 L. Ed. 2d 616 (1965).

Since 1979 the Commonwealth's Department of Revenue, the agency charged with administering the sales tax statute, has consistently stated in written pronouncements that drop shipments like those at issue here are subject to the sales tax, and that entities like Valley that deliver drop shipments to Massachusetts customers are liable for the sales tax. *See Letter Ruling 79-43 (October 25, 1979)*, [28] which addresses facts identical to the facts in this case:

> Your company (Company A) [Valley], which is located outside Massachusetts but registered as a Massachusetts vendor, sells merchandise to a non-Massachusetts retailer registered as a vendor in its own state but not in Massachusetts (Company B) [the Internet Vendor]. Company B takes legal title to the merchandise, but Company A delivers the merchandise directly to a customer of  Company B located in Massachusetts (Company C) [the Massachusetts customer]….

> Based on the foregoing, Company A [Valley] is required to collect a Massachusetts sales tax from Company B [the Internet Vendor] based on the price charged Company C [the Massachusetts customer] [in the absence of a resale certificate].

*Letter Ruling 79-43*

Identical circumstances were addressed again in 1986, with the same interpretation of the statue, in *Department of Revenue Directive 86-21 (August 20, 1986)* ("DD 86-21"): [29]

---

[28]    *Letter Ruling 79-43*, II-R-D-2.

[29]    *Department of Revenue Directive 86-21*, II-R-D-1

Facts: Acme Corporation [Valley] is a manufacturer registered as a Massachusetts vendor. Baker Corporation [the Internet Vendor], a retailer in another State, purchases property from Acme, and resells it to Charlie, a consumer in the Commonwealth [the Massachusetts consumer].  Acme ships the property directly to Charlie….

Directive: The drop shipment by Acme is a retail sale by it under the provisions of G.L. c. 64H, § 1(13).  <u>Acme</u> must include the retail selling price charged by Baker Corporation in its gross receipts and <u>must collect the tax imposed</u> from Baker.  The tax is a debt from Baker to Acme, recoverable in the same manner as other debts.

DD 86-21 (emphasis supplied).

To the same effect are a letter ruling issued in 1982,[30] a letter ruling issued in 1983, [31] and a letter ruling issued in 1984.[32]  The Bankruptcy Court erred in failing to give conclusive weight to these agency interpretations of the sales tax statute, as *Udall* prescribes.

Moreover, in 2004 the Massachusetts Legislature confirmed its agency's interpretation by enacting a clarifying amendment to the sales tax statute.  As amended, the relevant provision now states (with the additional language underlined):

When tangible personal property is <u>physically delivered</u> by an owner, a former owner thereof, a factor, or an agent or representative of the owner, former owner or factor, to the ultimate purchaser residing in or doing business in the commonwealth, or to any person for redelivery to the purchaser, pursuant to a retail sale made by a vendor not engaged in business in the commonwealth, the person making or effectuating the delivery shall be considered the vendor of that property, the transaction shall be a retail sale in the commonwealth by the person and that person, if engaged in business in the commonwealth, shall include the retail selling price in its gross receipts, <u>regardless of any contrary statutory or contractual terms concerning the passage of title or risk of loss which may be</u>

---

[30]    *Letter Ruling 82-7 (January 4, 1982)*, II-R-D-3.

[31]    *Letter Ruling 83-97 (November 3, 1983)*, II-R-D-4.

[32]    *Letter Ruling 84-37 (May 16, 1984)*, II-R-D-5.

<u>expressly or impliedly applicable to any contract or other agreement or arrangement for the sale, transportation, shipment or delivery of that property.</u>

Mass. G.L. c. 64H, § 1.

In *Technical Information Release 04-26 (October 21, 2004),*[33] the Commonwealth's Department of Revenue explained the amendment in a public written statement as being consistent with its previously-announced interpretation of the sales tax statue as being applicable to drop-ships:

> Massachusetts sales and use tax law generally requires a wholesaler with nexus to Massachusetts to collect tax when it ships goods into the Commonwealth on behalf of a retailer that is not required to collect the tax because it does not have nexus in this state. This amendment clarifies existing law, consistent with the Department's longstanding policy, that a company shipping goods to a Massachusetts customer may not avoid the application of this provision through contractual provisions governing passage of title.

*Technical Information Release 04-26 (October 21, 2004).*

The Bankruptcy Court erred in failing to interpret the sales tax statute in a manner consistent with the views of the Commonwealth's legislative body.

---

[33]     *Technical Information Release 04-26 (October 21, 2004),* I-R-15, attached to Valley's Supplemental Brief as Exhibit B filed with the Bankruptcy Court.

**CONCLUSION**

For the reasons set forth above, the Commonwealth respectfully requests that this Court enter an order (a) reversing the order of the Bankruptcy Court, and (b) holding that Valley's drop shipment transactions are subject to the Massachusetts sales tax.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF REVENUE
By its counsel,
THOMAS F. REILLY, ATTY. GENERAL
KEVIN BROWN, SP. ASST. ATTY. GENERAL

/S/___ Jeffrey S. Ogilvie_____
Jeffrey S. Ogilvie (MA Bar. No. 377815)
Massachusetts Department of Revenue
100 Cambridge Street, 7th Floor
Boston, MA 02114

/S/___ Stuart B. Drowos_____
Stuart B. Drowos (DE Bar No. 427
Deputy Attorney General
Division of Revenue, Department of Finance
Carvel Building, 820 French Street, 8th Floor
Wilmington, DE 19801
Local associated counsel for appellant.

Date: June 17, 2005

## CERTIFICATE OF SERVICE

I, Jeffrey S. Ogilvie, certify that on June 17, 2005, I served the following pleadings, to wit:

BRIEF OF APPELLANT COMMONWEALTH OF MASSACHUSETTS

by mailing a copy thereof to the following parties via UPS overnight delivery postage prepaid:


Robert J. Dehney
Michael G. Busenkell
Christopher M. Winter
Morris Nichols Arsht & Tunnell
1201 North Market Street
Delaware, MA  19899-1347

Edward DeFranceschi
6 Beacon Street
Boston, MA  02108-3802

Maria D. Giannirakis
Office of the U.S. Trustee
844 King Street, Suite 2313, Lockbox 35
J.Caleb Boggs Federal Building
Wilmington, DE 19801


  /S/ Jeffrey S. Ogilvie
Jeffrey S. Ogilvie