IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Bankruptcy Appeal

In Re:
VALLEY MEDIA, INC.,
Bankruptcy Case No. 01-11353

COMMONWEALTH OF MASSACHUSETTS DEPARTMENT OF REVENUE

Appellant/Creditor,

v.

VALLEY MEDIA, INC.,

Appellee/Debtor.

Civil Action No. 05-179 (JJF)

ANSWERING BRIEF FOR APPELLEE
VALLEY MEDIA

Morris, Nichols, Arsht & Tunnell
Robert J. Dehney, Esq.
Michael Busenkell, Esq.
Attorneys for Appellee
1201 North Market Street
Wilmington, DE 19899
(302) 658-9200

Edward DeFranceschi, P.C.
Edward DeFranceschi, Esq.
Jason Bell, Esq.
Attorneys for Appellee
6 Beacon Street, Ste 515
Boston, MA 02108
(617) 723-6068

Date of Filing: July 5, 2005

TABLE OF CONTENTS

Table of Citations--------------------------------------------------------------------------------iii

Statement of the Proceedings--------------------------------------------------------------------1

Summary of Argument-----------------------------------------------------------------------------2

Counter Statement of Facts-----------------------------------------------------------------------2

Argument--------------------------------------------------------------------------------------------4

I.    THE BANKRUPTCY COURT'S FINDING THAT APPELLEE'S DROP
      SHIPMENTS WERE DELIVERED TO THE INTERNET
      RETAILERS IN CALIFORNIA WAS NOT CLEARLY ERRONEOUS. ---------4

II.   APPELLEE'S SALE OF PRODUCTS TO THE INTERNET
      RETAILERS WERE NOT SALES AT RETAIL IN MASSACHUSETTS
      BECAUSE APPELEE DID NOT DELIVER PRODUCTS IN THE
      COMMONWEALTH OF MASSACHUSETTS. --------------------------------------5

      A.    The Bankruptcy Court correctly referred to the Uniform
            Commercial Code to determine the meaning of the term "delivery"
            as used in the Massachusetts sales tax statute. ---------------------------------6

      B.    Appellee did not act as an agent of the Internet Retailers. -------------------8

      C.    The Bankruptcy Court did not error when it analyzed the risk of
            loss provision in the Order Agreements to determine that Appellee
            and the Internet Retailers explicitly agreed that title to the Products
            passed in California. --------------------------------------------------------------10

      D.    The Bankruptcy Court did not error when it cited to the
            Connecticut Supreme Court's decision in Steelcase, Inc. v.
            Crystal. -----------------------------------------------------------------------------11

II.   THE AMENDED DEFINITION OF SALE AT RETAIL SUPPORTS THE
      BANKRUPTCY COURT'S DETERMINATION. -----------------------------------12

III.  THE MASSACHUSETTS SALES TAX STATUTE IS
      UNCONSTITUTIONAL BECAUSE IT VIOLATES THE COMMERCE
      CLAUSE OF THE UNITED STATES CONSTITUTION. -------------------------14

      A.    The Internet Retailers do not have substantial nexus with
            Massachusetts and the drop shipment of Products by Appellee to

the Massachusetts consumers does not provide the requisite nexus for Appellant to tax the Internet Retailers' sales to Massachusetts consumers. ------------------------------------------------------------------15

B.    The Massachusetts Drop Shipment Statute is not fairly apportioned. ----18

C.    The Massachusetts sales tax statute discriminates against interstate commerce because it provides differential treatment of in-state and out-of-state economic interests. ------------------------------------------------19

Conclusion-------------------------------------------------------------------------------------21

TABLE OF CITATIONS

<u>CASES</u>

Boston Stock Exchange v. State Tax Comm'n, 429 U.S. 318 (1977)----------------------20

Circuit City Stores, Inc. v. Commissioner of Revenue,
    439 Mass. 629, 790 N.E.2d 636 (Mass. 2003)-------------------------------------7, 10, 11

Commonwealth v. Clint C., 430 Mass. 219, 715 N.E.2d 1032 (Mass. 1999)----------------6

Commonwealth v. Zone Book, Inc., 372 Mass. 366, 361 N.E.2d 1239 (Mass. 1977)------6

Complete Auto Transit, Inc. v. Brady, 430 U.S. 274 (1977)---------------------------------15

Eusco, Inc. v. Huddleston, 835 S.W.2d 576 (Tenn. 1992)-------------------------------------7

Morrison v. Lennett, 415 Mass. 857, 616 N.E.2d 92 (Mass. 1993)-------------------------13

Oklahoma Tax Comm'n v. Jefferson Lines, Inc., 514 U.S. 175 (1995)---------------------18

Oregon Waste Sys., Inc. v. Department of Envtl. Quality, 511 U.S. 93 (1994)------------19

Quill Corp. v. North Dakota, 504 U.S. 298 (1992)------------------------------------9, 15, 17

Schlumberger Resource Managements Services, Inc. v. Cellnet Data Sys., Inc.
    (In re Cellnet Data Sys., Inc.), 327 F.3d 242 (3d Cir. 2003)-------------------------------4

Steelcase, Inc. v. Crystal, 238 Conn. 571, 680 A.2d 289 (Conn. 1996)----------7, 8, 11, 12

Steelcase, Inc. v. Director, Division of Taxation, 13 N.J. Tax 182
    (N.J. Tax Ct. 1993)--------------------------------------------------------------------16, 17, 20

The Neiman Marcus Group, Inc. v. Commissioner of Revenue, ATB Docket No.
    F245638, 2001 WL 1590444 (Mass. App. Tax Bd. 2001)--------------------------------7

Theos & Sons, Inc. v. Mack Trucks, Inc., 431 Mass. 736,
    729 N.E.2d 1113 (Mass. 2000)-------------------------------------------------------------8

Travenol Laboratories, Inc. v. Zotal, Ltd., 349 Mass. 95,
    474 N.E.2d 1070 (Mass. 1985)------------------------------------------------------------7, 8

VSA, Inc. v. Faulkner, 126 N.C. App. 421, 485 S.E.2d 348 (N.C. Ct. App. 1997)--------16

<u>STATUTES</u>

Mass. Gen. Laws ch. 64H, § 1-------------------------------------------------------------passim

Mass. Gen. Laws ch. 64H, § 2-------------------------------------------------------------5

Mass. Gen. Laws ch. 64H, § 8-------------------------------------------------------------16

Mass. Gen. Laws ch. 64I, § 3-------------------------------------------------------------19

Mass. Gen. Laws ch. 106, § 2-308-------------------------------------------------------7

Mass. Gen. Laws ch. 106, § 2-319-------------------------------------------------------7

<u>REGULATIONS</u>

Mass. Regs. Code tit. 830, § 64H.6.7(3)-----------------------------------------------7

<u>RULES</u>

Fed. R. Bank. P. 8013---------------------------------------------------------------------4

<u>OTHER</u>

2004 Mass. Acts 262; 2004 Mass. Legis. Serv. Ch. 262, § 48 (West)----------------------13

## STATEMENT OF THE PROCEEDINGS

On November 20, 2001, Appellee filed a voluntary petition under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq*. Prior to the filing of Appellee's bankruptcy petition, Appellant audited Appellee's books and records for the period January 31, 1997 through December 31, 2000 (R. Vol. II Stip. of Facts ¶ 1). Appellant claimed that Appellee owed unpaid Massachusetts sales taxes. On April 7, 2003, Appellant filed a proof of claim with the Bankruptcy Court for the alleged unpaid Massachusetts sales taxes (R. Vol. I Tab No. 1). Appellee objected to the portion of Appellant's claim relating to the transactions where Appellee acted as a drop shipper for sales that Appellee made to various independent internet retailers (R. Vol. I Tab No. 2).

On December 3, 2003, the parties filed a Stipulation of Facts with the Bankruptcy Court (R. Vol. II Stip of Facts). All of the relevant facts relating to Appellant's proof of claim were fully stipulated; there were no additional facts introduced to the Bankruptcy Court. On December 29, 2004, the Bankruptcy Court issued a memorandum opinion sustaining Appellee's objection to the portion of Appellant's claim relating to the drop shipments (R. Vol. I Tab No. 16). On January 13, 2005, the Bankruptcy Court entered an order disallowing Appellant's proof of claim for the Massachusetts sales taxes relating to Appellee's drop shipments (R. Vol. I Tab No. 17).

On February 9, 2005, Appellant filed a Notice of Appeal (R. Vol. I Tab No. 20). On March 28, 2005, the case was referred to mandatory mediation. The parties exhausted the potential for mediation and the mediator returned the case to the Court on

- 1 -

April 12, 2005. On June 3, 2005, the Court ordered a briefing schedule. On June 17, 2005, Appellant filed its opening brief with the Court.

## SUMMARY OF ARGUMENT

The Bankruptcy Court properly sustained Appellee's objection to the portion of Appellant's claim that related to the drop shipment transactions. The only issue in dispute is whether Appellee's drop shipments were "sales at retail" in Massachusetts pursuant to Massachusetts General Laws ch. 64H, § 1. Here, Appellee did not make any "sales at retail" in Massachusetts because it did not "deliver" tangible personal property into Massachusetts.

While the Bankruptcy Court found it unnecessary to decide this issue, Massachusetts General Laws ch. 64H, § 1 is unconstitutional because it violates the Commerce Clause of the United States Constitution.

## COUNTER STATEMENT OF FACTS

The Bankruptcy Court found that the relevant facts of this case were as follows. Appellee, with its principle place of business in Woodland, California, was a wholesale distributor of music and video products ("Products") (R. Vol. I Tab No. 16 at 2). Appellee conducted business through various channels, including sales to various independent internet retailers ("Internet Retailers") (R. Vol. I Tab No. 16 at 2). Appellee

sold Products to the Internet Retailers who then instructed Appellee to ship the Products directly to the Internet Retailers' Massachusetts customers (R. Vol. I Tab No. 16 at 3). This transaction is referred to as a drop shipment (R. Vol. I Tab No. 16 at 3).

The drop shipment transactions in this case are straight forward. Massachusetts consumers visited the web sites of Internet Retailers where they purchased Products (R. Vol. I Tab No. 16 at 3). Those Internet Retailers then purchased Products from Appellee (R. Vol. I Tab No. 16 at 3). To streamline the delivery process, pursuant to instructions from the Internet Retailers, Appellee caused the Products to be shipped directly to the Massachusetts consumers (R. Vol. I Tab No. 16 at 3). The Products were shipped by way of common carrier selected by the Internet Retailers (R. Vol. I Tab No. 16 at 3). No contractual relationship existed between Appellee and the Massachusetts consumers, and the consumers dealt directly with the Internet Retailers in making payment (R. Vol. I Tab No. 16 at 3, 6). In addition to the cost of the Products, the Internet Retailers also paid Appellee for the shipping and handling costs to get the Products to the Massachusetts customers (R. Vol. I Tab No. 16 at 3). The procedure for these Massachusetts drop shipments were governed by agreements between Appellee and the Internet Retailers ("Order Agreements") (R. Vol. I Tab No. 16 at 3). The twenty-six Internet Retailers at issue in this case had no nexus with Massachusetts (R. Vol. II Stip. of Facts ¶ 36).

Appellee had no relationship with the Massachusetts consumers (R. Vol. I Tab No. 16 at 3, 6). Furthermore, the Massachusetts consumers were not part of the Order Agreements (R. Vol. I Tab No. 16 at 7). Under the drop shipment arrangement between

- 3 -

Appellee and the Internet Retailers, the economic consequences to Appellee as a

wholesaler were the same as with a conventional sale to a retailer followed by a resale to

a customer with delivery by the retailer (R. Vol. I Tab No. 16 at 7).


ARGUMENT


I.    THE BANKRUPTCY COURT'S FINDING THAT
      APPELLEE'S DROP SHIPMENTS WERE DELIVERED
      TO THE INTERNET RETAILERS IN CALIFORNIA
      WAS NOT CLEARLY ERRONEOUS.

Pursuant to Rule 8013 of the Federal Rules of Bankruptcy Procedure, findings of

fact shall not be set aside unless clearly erroneous. *See* FED. R. BANK. P. 8013. "A

factual finding is clearly erroneous when 'the reviewing court on the entire evidence is

left with the definite and firm conviction that a mistake has been committed.'"

*Schlumberger Resource Management Services, Inc. v. Cellnet Data Sys., Inc. (In re*

*Cellnet Data Sys., Inc.)*, 327 F.3d 242, 244 (3d Cir. 2003)(quoting *United States v. United*

*States Gypsum Co.*, 333 U.S. 364, 395 (1948)).  Legal conclusions are reviewed de novo

and mixed questions of law and fact are reviewed under a mixed standard. *See id.* (citing

*In re Top Grande Sausage, Inc.*, 227 F.3d 123, 125 (3d Cir. 2000).


This is an appeal from an order of the Bankruptcy Court sustaining Appellee's

objection to the portion of Appellant's claim that relates to the drop shipment

transactions.  In sustaining the Appellee's objection, the Bankruptcy Court found that

Appellee's drop shipments of Products were delivered to the Internet Retailers in

California; not to the Internet Retailers' customers in Massachusetts (R. Vol. I Tab No.

16 at 7). The Bankruptcy Court did not error in making this finding because the Order

Agreements between Appellee and the Internet Retailers clearly provided that title and

risk of loss with respect to all Products passed to the Internet Retailers upon Appellee's

delivery of the Products to the carrier at the point of shipment in California (R. Vol. I Tab

No. 16 at 6). Accordingly, under the terms of the Order Agreements, the Bankruptcy

Court found that delivery took place in California as provided by Massachusetts Law

under the Uniform Commercial Code. *See* MASS. GEN. LAWS ch. 106, 2-308.


      II.      APPELLEE'S SALE OF PRODUCTS TO THE
INTERNET RETAILERS WERE NOT SALES AT
RETAIL IN MASSACHUSETTS BEACUSE APPELEE
DID NOT DELIVER PRODUCTS IN THE
COMMONWEALTH OF MASSACHUSETTS.


     The applicable sales tax statute in the case is Massachusetts General Laws ch. 64H, §

2, which provides that "[a]n excise is hereby imposed upon *sales at retail in the*

*Commonwealth,* by any vendor, of tangible personal property or of services performed in the

commonwealth at the rate of five percent of the gross receipts of the vendor from all sales of

such property or services, except as otherwise provided in this chapter." (emphasis added).

During the audit period, Massachusetts General Laws ch. 64H, § 1 defined "sale at retail" in

part as:

> [A] sale of services or tangible personal property or both for
> any purposes other than resale in the regular course of
> business. The delivery in the Commonwealth of tangible
> personal property by an owner or former owner thereof, or by
> a factor, or agent of such owner, former owner or factor, if the
> delivery is to a consumer or to a person for redelivery to a
> consumer, pursuant to a retail sale made by a retailer not

> engaged in business in the Commonwealth, is a retail sale in
> the Commonwealth by the person making the delivery. He
> shall include the retail selling price of the property in his gross
> receipts.

MASS. GEN. LAWS ch. 64H, § 1. The Bankruptcy Court correctly held that Appellee

never made a "sale at retail" because Appellee did not "deliver" tangible personal

property in Massachusetts pursuant to a retail sale by a retailer, here the Internet

Retailers, not engaged in business in the Commonwealth.

A.      The Bankruptcy Court correctly referred to the Uniform
        Commercial Code to determine the meaning of the term
        "delivery" as used in the Massachusetts sales tax statute.

The term "delivery" is not defined in Massachusetts General Laws ch. 64H, § 1.

"When a statute does not define its words we give them their usual and accepted

meanings, as long as these meanings are consistent with the statutory purpose. We derive

the words' usual and accepted meanings from sources presumably known to the statute's

enactors, such as their use in other legal contexts and dictionary definitions."

*Commonwealth v. Zone Book, Inc.*, 372 Mass. 366, 369, 361 N.E.2d 129, 1242 (Mass.

1977); *see also Commonwealth v. Clint C.*, 430 Mass. 219, 225, 715 N.E.2d 1032, 1036-

37 (Mass. 1999).

Appellant argues that the Bankruptcy Court's analysis of the term "delivery"

erroneously forced the sales tax provision into the confines of the Uniform Commercial

Code. Here, Appellant's contention is not supported by Massachusetts case law.

Massachusetts courts have consistently referred to commercial law principles for specific

guidance on the meaning of "delivery" and the place of delivery in a sales tax context. *See The Neiman Marcus Group, Inc. v. Commissioner of Revenue*, ATB Docket No. F245638, 2001 WL 1590444, at *4 (Mass. App. Tax Bd. January 24, 2001)(referring to Uniform Commercial Code to determine where the passage of title occurred for sales tax purposes); *Circuit City Stores, Inc. v. Commissioner of Revenue*, 439 Mass. 629, 635, 790 N.E.2d 636, 640 (Mass. 2003)(referring to the Uniform Commercial Code when issues concerning title become material); MASS. REGS. CODE tit. 830, § 64H.6.7 (3)(referring to Uniform Commercial Code in a sales tax context); *see also Steelcase, Inc. v. Crystal*, 238 Conn. 571, 586, 680 A.2d 289, 296-97 (Conn. 1996)(referring to Uniform Commercial Code for the meaning of delivery as used in a Connecticut sales tax statute); *Eusco, Inc. v. Huddleston*, 835 S.W.2d 576, 579 (Tenn. 1992)(explaining that for sales tax purposes, the place where title is transferred is determined under applicable provisions of Uniform Commercial Code).

The Massachusetts version of the Uniform Commercial Code allows parties to agree where the delivery of shipments will occur. MASS. GEN. LAWS. Ch. 106, § 2-308. "*Unless otherwise agreed* (a) the place for delivery of the goods is the seller's place of business or if he has none his residence . . . ." *See id.* The Order Agreements between Appellee and the Internet Retailers contained transfer of title and risk of loss provisions clearly stating that all shipments will be made F.O.B. Appellee's shipping facility in California (R. Vol. I Tab No. 16 at 5). It is widely accepted that F.O.B. means that delivery takes place when the seller places the goods into the hands of a common carrier at the seller's place of business. *See* MASS. GEN. LAWS ch.106, § 2-319; *Travenol*

*Laboratories, Inc. v. Zotal, Ltd.*, 394 Mass. 95, 100, 474 N.E.2d 1070, 1074 (Mass.

1985); *see also Steelcase*, 238 Conn. at. 588, 680 A.2d at 298. Based on the foregoing,

the Bankruptcy Court did not error in finding that Appellee's drop shipments of Products

were delivered to the Internet Retailers in California and not to the Internet Retailers'

customers in Massachusetts. Because Appellant did not "deliver" Products in

Massachusetts, Appellee did not make a "sale at retail" within Massachusetts and is not

responsible for the sales tax on the Products that it drop shipped to the Massachusetts

consumers.

      B.           <u>Appellee did not act as an agent of the Internet Retailers.</u>

On brief, Appellant mischaracterizes the relationship between Appellee and the

Internet Retailers as an agency relationship. By claiming that Appellee is the Internet

Retailers' agent, presumably Appellee would be responsible for collecting the sales tax

from the Massachusetts consumers on behalf of the Internet Retailers. In Massachusetts,

"[a]n agency relationship is created when there is mutual consent, express or implied, that

the agent is to act on behalf and for the benefit of the principal, and subject to the

principal's control." *Theos & Sons, Inc. v. Mack Trucks, Inc.*, 431 Mass. 736, 742, 729

N.E.2d 1113, 1119 (Mass. 2000).

Here, there is no evidence in the record to indicate that: (1) Appellee was to act on

behalf and for the benefit of the Internet Retailers; or (2) that Appellee is controlled by

Internet Retailers. The Bankruptcy Court correctly found that there are two separate

contractual arrangements at work in the Appellee's drop shipments (R. Vo. I Tab No. 16 at 9). The first contract extends between the Massachusetts consumer and the Internet Retailers (R. Vol. I Tab No. 16 at 9). The second contract encompasses the relationship between the Internet Retailers and Appellee (R. Vol. I Tab No. 16 at 9). Appellant even acknowledges that the drop shipments in this case are three-party transactions (Brief of Appellant at 10). It is clear from the face of the Order Agreements that Appellee and the Internet Retailers each sought their own gain from the sale of the Products. Furthermore, the Bankruptcy Court found that: (1) Appellee had no relationship with the Massachusetts consumers; and (2) the Order Agreements do not indicate that the Massachusetts consumers could even contact Appellee (R. Vol. I Tab No. 16 at 6-7).

Appellant's suggestion that Appellee, an unrelated third party that merely places a package with a common carrier, is an agent of the Internet Retailers extends the concept of agency to absurd new heights. Appellee is not an agent of the Internet Retailers and thus, not responsible for collecting sales tax from the Massachusetts customers on behalf of the Internet Retailers. Even if it was determined that Appellee was the agent of the Internet Retailers, the Supreme Court's decision in *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992) prevents Appellant from imposing a tax on the Internet Retailers' retail sale of Products to Massachusetts consumers because the Internet Retailers do not have substantial nexus with Massachusetts.

C.    The Bankruptcy Court did not error when it analyzed the
      risk of loss provision in the Order Agreements to determine
      that Appellee and the Internet Retailers explicitly agreed
      that title to the Products passed in California.

Appellant misconstrues *Circuit City Stores, Inc. v. Commissioner of Revenue*, 439 Mass. 629, 790 N.E.2d 636 (Mass. 2003) to argue that the Bankruptcy Court erroneously relied on the risk of loss provision in the Order Agreements to determine that Appellant did not deliver Products in the Commonwealth.

The *Circuit City Stores, Inc.* case dealt with sales of goods by Circuit City directly to Massachusetts customers in stores located in Massachusetts. Even though *Circuit City Stores, Inc.* is not a "drop shipment" case, it offers guidance on the issue in this case. In *Circuit City Stores, Inc.,* the Supreme Judicial Court of Massachusetts ("SJC") explained that the focus of the disagreement between Circuit City and the Commissioner was "when, and where, title passed from Circuit City to the customers." *Circuit City Stores, Inc.*, 439 Mass. at 634, 790 N.E.2d at 639. The SJC cited to section 2-401 of the Uniform Commercial Code for instruction on this issue. "With respect to situations, as here, where 'matters concerning title become material,' § 2-401(2) provides that, '*[u]nless otherwise explicitly agreed* title passes to the buyer at the time and place at which the seller completes his performance with reference to physical delivery of the goods.'" *Circuit City Stores, Inc.*, 439 Mass. at 635, 790 N.E.2d at 640 (emphasis added). Since the SJC could not discern an explicit agreement between Circuit City and its customers concerning the passage of title, the SJC went on to analyze Circuit City's performance

with reference to physical delivery of the goods. *See Circuit City Stores, Inc.*, 439 Mass. at 636, 790 N.E.2d at 640.

In this case, the Bankruptcy Court did not error when it found that there was an explicit agreement between Appellee and the Internet Retailers concerning the passage of title (R. Vol. I Tab No. 16 at 5). The Order Agreements provided that with respect to all orders and Products shipped by Appellee, title shall pass to the Internet Retailers upon delivery of the Products to the common carrier at the point of shipment in California (R. Vol. I Tab No. 16 at 5). Accordingly, Appellant misconstrues the holding reached by the SJC in *Circuit City Stores, Inc. v. Commissioner of Revenue*, 439 Mass. 629, 790 N.E.2d 636 (Mass. 2003). It is unnecessary to analyze the time and place of Appellee's performance with reference to the physical delivery of the goods because here there was an explicit agreement by the parties as to the passage of title. Appellee and the Internet Retailers explicitly agreed that title to the products passed in California. Once Appellee delivered the products to the California shipping point, the Internet Retailers became the owner of the products. Because Appellee no longer had title to the products, Appellee could not also make a sale, or alternatively a delivery, of the products in Massachusetts.

    D.       The Bankruptcy Court did not error when it cited to the Connecticut Supreme Court's decision in Steelcase, Inc. v. Crystal.

The facts of *Steelcase, Inc. v. Crystal*, 238 Conn. 571, 680 A.2d 289 (Conn. 1996) are analogous to this case. Appellant mischaracterizes Appellee's role in the transaction in an attempt distinguish this case from *Steelcase, Inc.* Once Appellee placed the

Products into the hands of the common carrier at the shipping point in California,

Appellee, like Steelcase, had no further involvement in the drop shipment. Appellant's

attempt to distinguish the Connecticut and Massachusetts sales tax statutes is likewise

unpersuasive. The "agent" provision in the Massachusetts sales tax statute that Appellant

notes is missing from the Connecticut sales tax statute references the agent of the owner

of former owner. It does not make reference to the agent of the retailer not engaged in

business in the state. The key provision to both statutes is that there must be a *delivery*

by an owner or former owner pursuant to a retail sale by a retailer not engaged in

business in the state. For the foregoing reasons, the Bankruptcy Court did not error when

it cited to the Connecticut Supreme Court's decision in *Steelcase, Inc. v. Crystal*, 238

Conn. 571, 680 A.2d 289 (Conn. 1996).


II.     THE AMENDED DEFINITION OF SALE AT RETAIL
        SUPPORTS THE BANKRUPTCY COURT'S
        DETERMINATION.

In light of the decision reached by the Connecticut Supreme Court in *Steelcase,

Inc. v. Crystal*, 238 Conn. 571, 680 A.2d 289 (Conn. 1996), the Governor of

Massachusetts proposed legislation to amend the definition of "sale at retail" to address

the delivery issue. On August 9, 2004, the Massachusetts Legislature, through an

emergency act, amended the definition of "sale at retail." *See* 2004 Mass. Acts 262; 2004

Mass. Legis. Serv. Ch. 262, § 48 (West).


According to the amendment, any contractual terms agreed to by the parties

concerning the passage of title or risk of loss *are now irrelevant* when determining

- 12 -

whether there was a delivery, and consequently a "sale at retail," in the Commonwealth. The amended definition of "sale at retail" states:

> When tangible personal property is *physically delivered* by an owner, a former owner thereof, a factor, or an agent or representative of the owner, former owner or factor, to the ultimate purchaser residing in or doing business in the commonwealth, or to any person for redelivery to the purchaser, pursuant to a retail sale made by a vendor not engaged in business in the commonwealth, the person making or effectuating the delivery shall be considered the vendor of that property, the transaction shall be a retail sale in the commonwealth by the person and that person, if engaged in business in the commonwealth, shall include the retail selling price in its gross receipts, *regardless of any contrary statutory or contractual terms concerning the passage of title or risk of loss which may be expressly or impliedly applicable to any contract or other agreement or arrangement for the sale, transportation, shipment or delivery of that property.*

MASS. GEN. LAWS ch. 64H, § 1 (emphasis added).  Accordingly, under the revised statute effective August 9, 2004, all that matters now for there to be a "sale at retail" in Massachusetts is the physical delivery of tangible personal property into Massachusetts.

"It can be assumed that new legislation alters existing law." *Morrison v. Lennett*, 415 Mass. 857, 863, 616 N.E.2d 92, 96 (Mass. 1993)(citing *Marshfield v. Springfield*, 337 Mass. 633, 637-38, 151 N.E.2d 53 (Mass. 1958)).  If contractual terms between the parties concerning the passage of title or risk of loss are now irrelevant for sales taking place on or after August 9, 2004, clearly contractual terms concerning the passage of title or risk of loss were relevant for sales taking place prior to August 9, 2004.  It would not have been otherwise necessary to amend the definition of "sale at retail" to accomplish the same purpose. *See id.* at 864.

- 13 -

Here, the Bankruptcy Court found that Appellee's sales in question took place between January 31, 1997 and December 31, 2000 (R. Vol. I Tab No. 16 at 6-7). Contractual terms concerning the passage of title and risk of loss, therefore, were relevant in determining whether there was a delivery, and consequently a "sale at retail," in the Commonwealth. Pursuant to Appellee's contracts with the Internet Retailers and the Uniform Commercial Code, the Bankruptcy Court correctly determined that the Internet Retailers took title to the products in California (R. Vol. I Tab No. 16 at 5). Since delivery, or alternatively, the transfer of possession, took place in California, Appellee could not also deliver the Products in Massachusetts.

III.    THE MASSACHUSETTS SALES TAX STATUTE IS
        UNCONSTITUTIONAL BECAUSE IT VIOLATES THE
        COMMERCE CLAUSE OF THE UNITED STATES
        CONSTITUTION

If it is deemed that the drop shipments were delivered in Massachusetts, Appellee's objection to Appellant's claim relating to the drop shipments still must be sustained because the Massachusetts sales tax statute is unconstitutional. Massachusetts General Laws ch. 64H, § 1[1] requires Appellee to include in its gross receipts the retail price that the Internet Retailers charged to the Massachusetts consumers. In essence, Massachusetts General Laws ch. 64H, § 1 removes the Internet Retailers from the transaction and substitutes Appellee into the sale as the party making the sale. This

---

[1] MASS. GEN. LAWS ch. 64H, § 1 reads "[t]he delivery in the Commonwealth of tangible personal property by an owner or former owner thereof, or by a factor, or agent of such owner, former owner or factor, if the delivery is to a consumer or to a person for redelivery to a consumer, pursuant to a retail sale made by a retailer not engaged in business in the Commonwealth, *is a retail sale in the Commonwealth by the person making the delivery.  He shall include the retail selling price of the property in his gross receipts*." (emphasis added).

statutory scheme violates the Commerce Clause of the United States Constitution. It can not be enforced by this court.

Under the Commerce Clause, a state tax will be struck down as unconstitutional unless it meets a four-pronged test. *See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274 (1977). The Supreme Court states that a tax will survive a Commerce Clause challenge if the tax: (1) is applied to an activity with a substantial nexus in the state; (2) is fairly apportioned so that it does not result in multiple taxation; (3) does not discriminate against interstate commerce; and (4) is fairly related to the services provided by the state. *See id.* at 277-278. The Massachusetts sales tax statue violates the nexus, apportionment, and discrimination requirements of the Commerce Clause. Accordingly, the Massachusetts sales tax statute must be struck down as unconstitutional.

> A. The Internet Retailers do not have substantial nexus with Massachusetts and the drop shipment of Products by Appellee to the Massachusetts consumers does not provide the requisite nexus for Appellant to tax the Internet Retailers' sales to the Massachusetts consumers.

In *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992), the Supreme Court explained that for a state to impose a sales/use tax collection responsibility upon the retailer, the retailer must have substantial nexus through physical presence, such as employees or property, in the taxing state. Because the Internet Retailers do not have substantial nexus in Massachusetts (R. Vol. II Stip of Facts at ¶ 36.), the Massachusetts sales tax statute substitutes Appellee in as the party responsible for collecting the tax. The Bankruptcy Court, however, found that Appellee is not part of the retail transaction

between the Internet Retailers and the Massachusetts consumers (R. Vol. I Tab No. 16 at

3).  In the drop shipment transactions in this case, there are three parties, Appellee, the

Internet Retailers, and the Massachusetts consumers, and two transactions.  *See Steelcase,*

*Inc. v. Director, Division of Taxation*, 13 N.J. Tax 182, 193 (N.J. Tax Ct.

1993)(explaining that in a drop shipment transaction there are three parties and two

transactions; a sale from the Distributor to the out-of-state Retailer and a sale from the

out-of-state Retailer to the Retailer's in-state Consumer).  The Bankruptcy Court found

that the first transaction is the wholesale transaction between Appellee and the Internet

Retailers (R. Vol. I Tab No. 16 at 9-10).  Under Massachusetts General Laws ch. 64H, §

8,[2] this transaction is exempt from sales/use tax as a sale for resale.  The Bankruptcy

Court found that the second transaction is the retail transaction between the Internet

Retailers and the Massachusetts consumers (R. Vol. I Tab No. 16 at 9).  Appellee is not a

party to this second transaction (R. Vol. I Tab No. 16 at 3).  Delivering the goods directly

to the Massachusetts consumers, rather than to the Internet Retailers, does not transform

Appellee into the Internet Retailers.  *See VSA, Inc. v. Faulkner*, 126 N.C. App. 421, 485

S.E.2d 348, 350 (N.C. Ct. App. 1997)(explaining that the "drop shipment of the products

did not operate to transform what would otherwise be a sale outside of the State into a

sale within the State.").  Appellee is no more a party to the transaction between the

Internet Retailers and the Massachusetts consumers than is the U.S. Postal Service or

Federal Express performing the ancillary service of delivering the product.

---

[2] MASS. GEN. LAWS ch. 64H, § 8(a) states in part that "[i]t shall be presumed that all gross receipts of a vendor from the sale of services or tangible personal property are from sales subject to tax until the contrary is established. The burden of proving that a sale of services or tangible personal property by any vendor is not a sale at retail shall be upon such vendor unless he takes from the purchaser a certificate to the effect that the service or property is purchased for resale, and such certificate is received and made available to the commissioner not later than sixty days from the date of notice from the commissioner to produce such certificate."

The lack of sufficient nexus between the retail transaction and Appellee is further supported by the inability of Appellant to collect sales/use tax from the Internet Retailers if the goods were actually delivered to the Internet Retailers and then reshipped by the Internet Retailers to their Massachusetts consumers. If the Internet Retailers, having no Massachusetts nexus, ship the products to their Massachusetts consumers by common carrier, *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992), prevents Appellant from imposing a tax-collection requirement on the Internet Retailers. The Massachusetts sales tax statute, however, attempts to collapse the two separate transactions (the wholesale transaction and the retail transaction) into a sale by Appellee to the Massachusetts consumers in order to impose on Appellee the obligation to collect a sales tax on the Internet Retailers' retail sales to the Massachusetts consumers. *See Steelcase, Inc. v. Director, Division of Taxation*, 13 N.J. Tax 182, 193-94 (N.J. Tax Ct. 1993)(recognizing that by imposing the sales tax obligation on Steelcase, the Director attempted to telescope the two separate drop shipment transactions into a sale by Steelcase to the New Jersey customer). Accordingly, the Massachusetts sales tax statute circumvents *Quill Corp. v. North Dakota*, 504 U.S. 298 (1992), by imposing an obligation on Appellee to collect sales taxes on retail transactions that otherwise are constitutionally protected. The Massachusetts sales tax statute must be struck down inasmuch as it fails to satisfy the substantial nexus requirement.

    B.          <u>The Massachusetts Drop Shipment Statute is not fairly apportioned.</u>

Under the Commerce Clause, a state tax must be fairly apportioned among the states where the taxpayer is doing business. In determining whether taxes are fairly apportioned, the Supreme Court in *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175 (1995), applied an external and internal consistency test. The Massachusetts sales tax statute violates the external consistency test.

Under the external consistency test, the Court looks "to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State." *Jefferson Lines*, 514 U.S. at 184. A state's impermissible overreaching may be indicated by the "threat of multiple taxation (though not by literally identical statutes)." *Id*. Here, the Massachusetts sales tax statute creates a risk of multiple taxation because there is substantial risk that both Appellee and the Massachusetts consumers will pay a tax on the same transaction. Appellee could pay a sales tax while the Massachusetts consumers could pay a use tax.

The fact that Appellee and the Massachusetts consumers are not privy to the retail transaction creates the threat of multiple taxation. The Massachusetts consumers have no means of knowing if Appellee collected the sales tax, based on the retail price, from the Internet Retailers. It is also unclear how the Massachusetts consumers would know how to contact Appellee for the receipt showing that the sales tax was paid on the transaction.

Inasmuch as the Massachusetts consumers must provide evidence of a receipt that a sales tax has been paid before their use tax liability is eliminated,[3] the Massachusetts consumers, without knowing if Appellee collected sales tax from the Internet Retailers, would pay the use tax on the transaction.  Likewise, Appellee has no means of knowing which of the Massachusetts consumers self-assessed use tax or paid the use tax under audit.

Because the Massachusetts sales tax statute creates a significant risk of multiple taxation, it violates the external consistency requirement.  Accordingly, the Massachusetts sales tax statute must be struck down as unconstitutional.

> C.      The Massachusetts sales tax statute discriminates against interstate commerce because it provides differential treatment of in-state and out-of-state economic interests.

The Commerce Clause precludes imposition of state tax that discriminates against interstate commerce.  In *Oregon Waste Sys., Inc. v. Department of Envtl. Quality*, 511 U.S. 93, 98 (1994), the Supreme Court stated that "discrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the later."  If a restriction is discriminatory, it is "virtually per se invalid."  *Id.*

The Massachusetts sales tax statute places a burden on Appellee to collect sales tax from the Massachusetts consumer if Appellee's drop shipment of products is pursuant

---

[3] See MASS. GEN. LAWS ch. 64I, § 3.

to a retail sale made by Internet Retailers not engaged in business in Massachusetts. If, however, the Internet Retailers are engaged in business in Massachusetts, Appellee is not obligated to collect the sales tax from the Massachusetts consumer. Based on the foregoing, the Massachusetts sales tax statute creates two categories of taxpayers and treats them differently based on whether the transaction is interstate or intrastate.

This differential treatment between in-state and out-of-state Internet Retailers unduly burdens interstate commerce. Since Appellee's obligation to collect the sales taxes only arises if it makes a sale to out-of state Internet Retailers, Appellee may prefer to deal with Massachusetts Internet Retailers only (or registered out-of-state Internet Retailers). So long as Appellee accepts a resale certificate from Internet Retailers registered in Massachusetts, Appellee is under no obligation to collect sales tax on the transaction.[4] Thus, out-of-state Internet Retailers may have an incentive or be compelled to become Massachusetts Internet Retailers. A taxing statute violates the Commerce Clause if it imposes discriminatory taxation that creates incentives to relocate within the taxing state. *See Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318 (1977); *see also Steelcase, Inc. v. Director, Division of Taxation*, 13 N.J. Tax 182, 194 (N.J. Tax Ct. 1993)(explaining that forcing an out-of-state dealer to register in New Jersey in order to provide the manufacturer with a New Jersey Exemption certificate smacks of discrimination against interstate commerce). Because the Massachusetts sales tax statute discriminates between in-state and out-of-state retailers, it must be struck down as unconstitutional.

---

[4] Under Massachusetts General Laws ch. 64H, § 8, the sale of tangible property is presumed to be a sale subject to tax unless the vendor takes from the purchaser a certificate to the effect that the service or property is purchased for resale.

Although the amended definition of "sale at retail" does not apply to Appellee's January 31, 1997 through December 31, 2000 transactions, Appellee maintains that the amendment has the same constitutional infirmities.

## CONCLUSION

For the foregoing reasons, this Court should affirm the decision of the Bankruptcy Court sustaining Appellee's objection to the portion of Appellant's claim that relates to the drop shipment transactions.

Respectfully submitted,

Morris, Nichols, Arsht & Tunnell

_____
Robert J. Dehney, Esq. (No. 3578)
Michael Busenkell, Esq. (No. 3933)
Attorneys for the Debtor
1201 North Market Street
Wilmington, DE 19899
(302) 658-9200

Edward DeFranceschi, PC
Edward DeFranceschi, Esq.
Jason Bell, Esq.
Attorneys for the Debtor
6 Beacon Street, Ste 515
Boston, MA 02108
(617) 723-6068