IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
Bankruptcy Appeal

---

In Re: VALLEY MEDIA, INC., Valley
Bankruptcy Case No. 01-11353

---

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF REVENUE, Creditor/Appellant
v.
VALLEY MEDIA, INC., Debtor/Appellee
Civil Action No. 05-179 (JJF)

---

# REPLY BRIEF OF APPELLANT
# COMMONWEALTH OF MASSACHUSETTS

---

Thomas F. Reilly, Atty. General
Kevin Brown, Special Asst. Atty. Gen.
Jeffrey S. Ogilvie (MA Bar No. 377815)
Massachusetts Department of Revenue
100 Cambridge Street, 7th Floor
Boston, MA 02114
617-626-3223
   *Counsel for Appellant*

Stuart B. Drowos (DE Bar No. 427)
Deputy Attorney General
Div. of Revenue, Department of Finance
Carvel Bldg., 820 French Street, 8th Floor
Wilmington, DE 19801
302-577-8660
   *Local associated counsel for Appellant*

Date: July 18, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii

SUMMARY OF REPLY ....................................................................................................................1

ARGUMENT .....................................................................................................................................1

    A.    Initial Delivery Of The Product In California Is Irrelevant, As Well As Undisputed. ...................................................................................................................1

    B.    The Fulfillment Agreements Create An Express Agency Relationship Between Valley As Agent And The Internet Vendors As Principals. ..........................2

    C.    The Statutory Amendment Clarifies But Does Not Change The Meaning Of The Sales Tax Statute. ...............................................................................................6

    D.    Since Valley Has Substantial Nexus With Massachusetts, The Sales Tax Statute Is Constitutional. ...............................................................................................9

CONCLUSION ................................................................................................................................10

**TABLE OF AUTHORITIES**

**Cases**

*Boston Licensing Bd. v. oston*, 17 Mass. App. Ct. 10, 455 N.E. 2d 469 (Mass. App. Ct., 1983). ........................................................................................................................ 7

*Corsentino v. Cordova*, 4 P.3d 1082 (Colo., 2000). .................................................................... 7

*Morrison v. Lennett*, 415 Mass. 857, 616 N.E. 2d 92 (1993) ...................................................... 5

*National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 97 S.Ct. 1386, 51 L.Ed. 2d 631 (1977) ...................................................................................... 9

*Theos & Sons, Inc. v. Mack Truck, Inc.*, 1999 Mass. App. Div. 14, 1999 Mass. App. Div. Lexis 6 (1999), *aff'd* 431 Mass. 736, 729 N.E. 2d 113 (2000) (citation omitted). ................................................................................................................................ 3

*Theos & Sons, Inc. v. Mack Truck, Inc.*, 431 Mass. 736, 729 N.E. 2d 113 (2000) ................ 2, 3, 4

**State Statutes**

Mass. G.L. c. 64H § 1 ............................................................................................................... 2, 6

**Treatises**

1A, Sutherland, Statutory Construction, §22:30 (Singer, 6th Ed., 2002 revision). ....................... 7

**SUMMARY OF REPLY**

The creditor-appellant, the Commonwealth of Massachusetts Department of Revenue ("Commonwealth") submits this brief in reply to the Answering Brief For Appellee Valley Media.

The Commonwealth does not, as Valley seems to argue, dispute the Bankruptcy Court's finding that the product was delivered by Valley to the Internet Vendors in California. The sales tax statute subjects these transactions to the tax because the product was redelivered to Massachusetts customers by Valley as the agent of the Internet Vendors. Valley's effort to disclaim this agency relationship is unavailing, and contradicted by the contents of the Agreements. A balanced analysis shows that the 2004 amendment to the sales tax statute clarified, rather than changed, the statute.

The sales tax statue is constitutional, since the incidence of the tax falls not on the Internet Vendors, who have no nexus with Massachusetts, but on Valley, which does.

**ARGUMENT**

**A.    Initial Delivery Of The Product In California Is Irrelevant, As Well As Undisputed.**

In Point I and Point II-A of its brief, pages 4 – 8, Valley points to the Bankruptcy Court's factual finding that the product was delivered by Valley to the Internet Vendors F.O.B. in California, and argues this establishes that the transaction is not taxable.

This argument accurately summarizes the Bankruptcy Court's decision, but contributes nothing to the resolution of the questions presented in the appeal. The Commonwealth does not challenge the Bankruptcy Court's finding of fact that, under the Agreement between Valley and the Internet Vendors and Uniform Commercial Code principles, Valley delivered the product to

1

the Internet Vendors in California.  Valley's iteration of these undisputed points merely elides the Commonwealth's argument on appeal: that the Bankruptcy Court's reasoning on this point is in error and fails to apply the express terms of the sales tax statute.

Valley's Points I and II-A, and the Bankruptcy Court's decision, ignore the disjunctive use of the comma and the word "or" in the Massachusetts sales tax statute.

> The **delivery** in the commonwealth of tangible personal property by an owner or former owner thereof**, or** by a factor, or agent of such owner, former owner or factor, if the **delivery** is to a consumer or to a person for **redelivery** to a consumer, pursuant to a retail sale made by a retailer not engaged in business in the commonwealth, is a retail sale in the commonwealth by the person making the **delivery**.

Mass. G.L. c. 64H § 1 (emphasis supplied).

The statute does not impose a sales tax on the transaction between Valley and the Internet Vendors, for the very reason stated by the Bankruptcy Court: as between Valley and the Internet Vendors, that delivery occurred in California, not Massachusetts.  Rather, the sales tax is imposed on the redelivery to consumers in the Commonwealth by Valley as agent of the owner.  Valleys' argument (and the Bankruptcy Court decision) does not address this three-party aspect of the sales tax statute.

**B.    The Fulfillment Agreements Create An Express Agency Relationship Between Valley As Agent And The Internet Vendors As Principals.**

Valley relies on *Theos & Sons, Inc. v. Mack Truck, Inc.*, 431 Mass. 736, 729 N.E. 2d 113 (2000)  for a general statement of Massachusetts agency law, and asserts that the Commonwealth "mischaracterizes" the relationship between Valley and the Internet Vendors.

In *Theos*, the owner of a used Mack truck (Theos) brought the truck to Vigor Diesel Injection, Inc., to have the engine repaired.  The engine failed after Vigor attempted to repair it.

Theos asserted that Mack Trucks, Inc. was liable for Vigor's actions, on the ground that Vigor was an authorized parts and service dealer for Mack, and as such had actual or apparent authority to work on the truck for Mack. After reciting the statement quoted by Valley in its brief, the Supreme Judicial Court additionally stated, "[the] fundamental element of [an] agency relationship is that [the] agent act on behalf and for [the] benefit of [the] principal." *Id.,* 729 N.E. 2d at 1119.

The Court explained that the principal's liability to third parties for the acts of the agent turns on the existence of actual or apparent authority to perform those acts, and that "[a]ctual authority results when the principal explicitly manifests consent, either through words or conduct, that the agent should <u>act on behalf of the principal</u>." *Id.,* 729 N.E. 2d at 1120, fn. 13. "Actual authority, either express or implied, is the agent's power to <u>affect the principal's relations with third parties</u> as manifested to the agent by the principal." *Id.,* 729 N.E. 2d at 1120. (emphasis supplied.) As stated by the intermediate appellate court in this case, "'The essence of the principal-agent relationship is the right of power or control by the alleged principal over the conduct of the alleged agent.'" *Theos & Sons, Inc. v. Mack Truck, Inc.*, 1999 Mass. App. Div. 14, 17, 1999 Mass. App. Div. Lexis 6, 10 (1999), *aff'd* 431 Mass. 736, 729 N.E. 2d 113 (2000) (citation omitted).

In *Theos*, the Court noted that the dealer agreement specified that Vigor was an independent contractor and that Vigor was not the agent of Mack; yet, the agreement also provided specific requirements with respect to warranty work and gave Mack some control over the work. The Court assumed, without deciding, that Vigor was Mack's agent for warranty work, but upheld the lower court's determination that there was insufficient evidence of an agency relationship for non-warranty work. *Theos*, 729 N.E. 2d at 1119, 1120-1122.

3

In this case, unlike *Theos*, the Order Fulfillment Agreements do not disclaim the existence of an agency relationship between Valley and the Internet Vendors, and do not provide that no agency relationship exists.[1] As in *Theos*, the Agreements are quite specific as to the requirements imposed on Valley and the degree of control exercised by the Internet Vendors. In addition to the paragraphs noted in the Commonwealth's opening brief (¶C, ¶2, and ¶ 8), the Order Placement term (¶7) indicates that the Internet Vendors retain complete control over the taking and preparation of orders for product, and for sending "such orders as it deems appropriate" to Valley.[2]

While the carriers to be used for shipment are those with which Valley does business, the Internet Vendors retain the authority to designate a shipper for the product from that list.[3] The Internet Vendors may request Valley to provide a variety of additional "Optional Services:" packing of paper insert and manufacturing inserts, attachment of barcodes, and gift-wrapping.[4] The Internet Vendors retain complete control over Valley's use of the "Retailer Marks."[5]

---

[1] Agreement, II-R-C-3, ¶¶17, 18, 19, 21, pp. 14-18. The Agreements merely provide that no "employer-employee" relationship exists, and, in that connection, state that the parties are "independent contractors." (¶21.9, p. 17) As demonstrated in *Theos*, such a provision does not necessarily prevent an agency relationship from being created. In any event, in its brief at pp. 8-9, Valley does not mention or rely on the provisions of ¶21.9 or the concept of an "independent contractor."

[2] Agreement, II-R-C-3, ¶7, p. 6.

[3] Agreement, II-R-C-3, ¶10.1, p. 9.

[4] Agreement, II-R-C-3, ¶13, pp. 11-12.

[5] Agreement, II-R-C-3, ¶15.3, p. 13.

Under the rule of *Theos*, Valley was acting on behalf of the Internet Vendors in shipping the product to Massachusetts consumers. This was an action that the Internet Vendors could have taken on their own; but, as stated in the Stipulation:

> Inasmuch as most [Internet Vendors] did not maintain a working inventory, [Valley], per the order Fulfillment Agreement, would ship the [Internet Vendors'] product order, in the name of the [Internet Vendors], directly to the [Internet Vendors'] customers.

Valley had the power and authority to affect the Internet Vendor's relations with the third-party Massachusetts customers in connection with the central and underlying aspect of that relation, namely the Massachusetts customer's receipt of the product that they ordered from the Internet Vendors. This power and authority was manifested by the Internet Vendors, in the express terms of the Agreements. Far from "extend[ing] the concept of agency to absurd new heights," as Valley derisively suggests at p. 9 of its brief, Valley's relationship with the Internet Vendors falls squarely within the defining characteristics of an actual and express agency.

It should be noted that the Bankruptcy Court's interpretation of the Massachusetts sales tax statute precluded consideration of the agency relationship between Valley and the Internet Vendors. By holding that delivery of the product in California foreclosed "delivery in the commonwealth" under the first four words of the statute, the Bankruptcy Court failed to even reach the second, disjunctive prong of the sales tax statute which follow the "or" and which imposes the sales tax upon delivery by an agent. But the parties have stipulated to all the relevant facts, and this Court is well qualified to determine that an agency relationship existed between Valley and the Internet Vendors as a matter of law.

5

**C.      The Statutory Amendment Clarifies But Does Not Change The Meaning Of The Sales Tax Statute.**

At Point II of its brief, pp. 12 – 14, Valley invokes the principle "new legislation alters existing law"[6] to support its argument that contractual terms concerning the passage of title were relevant under the prior version of the sales tax statute. Such a sweeping generalization is not applicable here. To demonstrate this it is necessary to juxtapose the statute as amended in 2004 with the statue as it was worded prior to its amendment during the period at issue in this case.[7]

As amended on August 9, 2004,[8] the sales tax statute reads as follows (the additions are italicized):

> *When tangible personal property is physically delivered* by an owner, a former owner thereof, a factor, or *an* agent *or representative* of *the* owner, former owner or factor, *to the ultimate purchaser residing in or doing business in the commonwealth,* or to *any* person for redelivery to *the purchaser*, pursuant to a retail sale made by a *vendor* not engaged in business in the commonwealth, *the person making or effectuating the delivery shall be considered the vendor of that property, the transaction shall be* a retail sale in the commonwealth by the person *and that person, if engaged in business in the commonwealth, shall include the retail selling price in its gross receipts, regardless of any contrary statutory or contractual terms concerning the passage of title or risk of loss which may be expressly or impliedly applicable to any contract or other agreement or arrangement for the sale, transportation, shipment or delivery of that property.*

Mass. G.L. c. 64H § 1.

---

[6]     Valley relies on *Morrison v. Lennett*, 415 Mass. 857, 863, 616 N.E. 2d 92, 96 (1993).

[7]     To facilitate comparison, we italicize the words that differ, and strike out the words that were deleted. The sales in this case took place between 1997 and 2000.

[8]     Mass. Act of 2004, 262, § 48, approved with emergency preamble, effective Aug 9, 2004.

6

Prior to August 9, 2004, and at the time of the sales at issue here (1997 – 2000, per Stip. ¶1, II-R-A.), the sales tax statute read as follows (the 2004 deletions are stricken through):

> ~~The delivery in the commonwealth of tangible personal property~~ by an owner ~~or~~ former owner thereof, ~~or by~~ a factor, or [***] agent [***] of [***] ~~such~~ owner, former owner or factor, ~~if the delivery is to a consumer~~ or to a person for redelivery to ~~a consumer~~, pursuant to a retail sale made by a ~~retailer~~ not engaged in business in the commonwealth, ~~is~~ a retail sale in the commonwealth by the person ~~making the delivery~~.

Mass. G.L. c. 64H § 1.

A leading authority states that, while "any material change in the language of the original act is presumed to indicate a change in legal rights…[t]he presumption of change is not conclusive and may be overcome by more persuasive considerations." 1A, Sutherland, Statutory Construction, §22:30 at 358-361, 366 (Singer, 6th Ed., 2002 revision) (emphasis supplied). For example, if the amendment revises an unambiguous statute, the presumption is more likely to apply than if the amendment revises and seeks to clarify an ambiguous statute.[9] Furthermore, when the amendment makes no material change to the statute, "the matter in the amendatory act may be looked to in order to determine what rights existed under the original act." Sutherland, § 22:30 at 374-75. "Thus, if an amendment clarifies the law, the law remains unchanged by the amendment." *Corsentino v. Cordova*, 4 P. 3d 1082, 1091 (Colo., 2000).

Massachusetts courts recognize and apply this principle. "Without a clear indication of intent to change the prior law, we assume that the prior law remains in effect." *Boston Licensing Bd. v. Boston*, 17 Mass. App. Ct. 10, 21, 455 N.E. 2d 469, 476 (Mass. App. Ct., 1983).

---

[9] "An amendment of an unambiguous statute indicates a purpose to change the law, whereas no such purpose is indicated by the mere fact of an amendment of an ambiguous provision." Sutherland, § 22:30 at 373.

7

Significantly for the present case, there is no doubt that statutes relating to taxation are within the scope of this principle. " 'Statutes are to be construed in the light of the preexisting common and statutory law with reference to the mischief probably intended to be remedied. . . . It is not to be lightly supposed that radical changes in the law were intended where not plainly expressed.' " *EMC Corp. v. Commissioner of Revenue*, 433 Mass. 568, 571, 744 N.E. 2d 55, 58 (2001). Enactment of statutory provisions for the purpose of clarification is a well-recognized and acceptable process. *See ROPT Ltd. Partnership v. Katin*, 431 Mass. 601, 729 N.E. 2d 282 (2000).

Here, no radical change was accomplished by the 2004 amendment. As discussed in the Commonwealth's opening brief, pp. 15-16, the Massachusetts Department of Revenue consistently interpreted the sales tax statute in precisely the manner set forth in the 2004 amendment for twenty-five years prior to the date of the amendment. The 2004 revisions to the sale tax statute are in the nature of technical corrections, in all respects expressing and clarifying Legislative agreement with this longstanding interpretation of the statute. "[W]hen the Legislature corrects a technical omission in a statutory provision by subsequent legislation, we may <u>view the corrective legislation as clarifying the intention of the Legislature</u> with reference to the existing legislation…."*Charles C. v. Commonwealth*, 415 Mass. 58, 67, 612 N.E. 2d 229, 234, fn. 5 (1993) (emphasis supplied).[10]

---

[10]   In light of this longstanding administrative interpretation, the Court should also be guided by the observation of the Supreme Judicial Court in *Massachusetts Respiratory Hospital v. Department of Public Welfare*, 414 Mass. 330 at 333, 607 N.E. 2d 1018 at 1021 (1993), refusing to overrule an administrative regulation due to later enactment of a statute on the subject: "To conclude otherwise might discourage the Legislature from eliminating uncertainties in existing legislation for fear that courts might construe its action as an admission that theretofore an agency lacked authority to act in a questioned area."

The Court should reject the presumption relied on by Valley, and hold that the 2004 amendment does not justify the interpretation of the sales tax statute, adopted by the Bankruptcy Court, that relieves Valley of the obligation to collect and pay over the sales tax.

D.  **Since Valley Has Substantial Nexus With Massachusetts, The Sales Tax Statute Is Constitutional.**

In Point III-A of its brief, pages 15 - 17 of its brief, Valley argues that Massachusetts cannot impose a sales tax on the Internet Vendors since they have no contact or nexus with Massachusetts.  But this is irrelevant, since Massachusetts is seeking to impose the sales tax on Valley, not on the Internet Vendors.  It is undisputed that Valley has nexus with Massachusetts: Valley owns and operate a warehouse in Massachusetts, and is registered for and pays the sales tax on taxable transactions. Stip. ¶5, II-R-A.  As set forth in its opening brief, MDOR has assessed the sales and use tax against Valley on the ground that Valley delivered goods into Massachusetts that are subject to the sales and use tax.

In Point III-B of its brief, pages 18 – 19, Valley argues that the sales tax "creates a risk of multiple taxation because there is a substantial risk that both [Valley] and Internet Vendors' customers will pay a tax on the same transaction."  This argument has been squarely rejected by the United States Supreme Court.

> All States that impose sales taxes also impose a corollary use tax on tangible property bought out of state to protect sales tax revenues and put local retailers subject to the sales tax on a competitive parity with out-of-state retailers exempt from the sales tax….The constitutionality of such state schemes is settled….

*National Geographic Society v. California Board of Equalization*, 430 U.S. 551, 97 S.Ct. 1386, 1389, 51 L.Ed. 2d 631 (1977) (citations omitted, emphasis supplied).

9

In any event, the Commonwealth has not, and will not, impose a use tax against the Massachusetts customers. Valley makes no suggestion to the contrary.

In Point III-C of its brief, pages 19 – 21, Valley argues that the tax "creates two categories of taxpayers." The premise of this sibylline argument seems to be that Massachusetts imposes differential treatment upon in-state and out-of-state Interntet Vendors. Valley fails to explain exactly, or even inexactly, how it perceives this as happening. The Commonwealth submits that this argument is irrelevant in any event, since this case does not involve the Internet Vendors at all. As noted above, the sales tax is being imposed against Valley.

## CONCLUSION

For the reasons set forth above, the Commonwealth respectfully requests that this Court enter an order (a) reversing the order of the Bankruptcy Court, and (b) holding that Valley's drop shipment transactions are subject to the Massachusetts sales tax.

Respectfully submitted,

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF REVENUE
By its counsel,
THOMAS F. REILLY, ATTY. GENERAL
KEVIN BROWN, SP. ASST. ATTY. GENERAL

| /S/___Jeffrey S. Ogilvie_____ | /S/   Stuart B. Drowos_____ |
|---|---|
| Jeffrey S. Ogilvie (MA Bar. No. 377815) | Stuart B. Drowos (DE Bar No. 427 |
| Massachusetts Department of Revenue | Deputy Attorney General |
| 100 Cambridge Street, 7th Floor | Div. of Revenue, Dept. of Finance |
| Boston, MA 02114 | Carvel Building, 820 French Street |
|  | Wilmington, DE 19801 |
|  | Local associated counsel for appellant. |

Date: June 18, 2005

# CERTIFICATE OF SERVICE

I, Jeffrey S. Ogilvie, certify that on July 18, 2005, I served the following pleadings, to wit:

REPLY BRIEF OF APPELLANT COMMONWEALTH OF MASSACHUSETTS

by mailing a copy thereof to the following parties via UPS overnight delivery postage prepaid:

Robert J. Dehney
Michael G. Busenkell
Christopher M. Winter
Morris Nichols Arsht & Tunnell
1201 North Market Street
Delaware, MA  19899-1347

Edward DeFranceschi
6 Beacon Street
Boston, MA  02108-3802

Maria D. Giannirakis
Office of the U.S. Trustee
844 King Street, Suite 2313, Lockbox 35
J.Caleb Boggs Federal Building
Wilmington, DE 19801

  /S/ Jeffrey S. Ogilvie____
Jeffrey S. Ogilvie