IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | |
| VALLEY MEDIA, INC., | : | Bankruptcy Case No. 01-11353-PJW |
| | : | |
| Debtor. | : | |
| ———————————————— | : ———————————————————— | |
| | : | |
| COMMONWEALTH OF MASSACHUSETTS | : | |
| DEPARTMENT OF REVENUE, | : | |
| | : | |
| Appellant/Creditor, | : | |
| | : | |
| v. | : | Civil Action No. 05-179-JJF |
| | : | |
| VALLEY MEDIA, INC., | : | |
| | : | |
| Appellee/Debtor. | : | |

Stuart B. Drowos, Esquire, Deputy Attorney General, Division of
Revenue, Department of Finance of the STATE OF DELAWARE
DEPARTMENT OF JUSTICE, Wilmington, Delaware.
Of Counsel: Thomas F. Reilly, Esquire, Attorney General, Kevin
Brown, Esquire, Special Assistant Attorney General, Jeffrey S.
Oglivie, Esquire of the MASSACHUSETTS DEPARTMENT OF REVENUE,
Boston, Massachusetts.
Attorney for Appellant/Creditor.

Robert J. Dehney, Esquire, Michael Busenkell, Esquire and Joanna
F. Newdeck, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Of Counsel: Edward DeFranceschi, Esquire and Jason Bell, Esquire
of EDWARD DeFRANCESCHI, P.C., Boston, Massachusetts.
Attorneys for Appellee/Debtor.

**MEMORANDUM OPINION**

February ⸱⸱ , 2006
Wilmington, Delaware

Farnan, District Judge.

Pending before the Court is an appeal of the January 13, 2005 Order of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") granting the Debtor's Fifth Omnibus Objection (Substantive) To Claims (Re: D.I. 1287). By the January 13, 2005 Order and the related Memorandum Opinion issued on December 29, 2004, the Bankruptcy Court disallowed the proof of claim filed by Appellant, the Commonwealth of Massachusetts Department of Revenue, for sales taxes related to drop shipments of the Debtor, Valley Media, Inc. For the reasons discussed, the Court will affirm the decision of the Bankruptcy Court.

## I.   Parties' Contentions

By way of brief factual background, this appeal concerns the sales tax on "drop shipment" transactions. The Debtor is a wholesale distributor of music and video products and sold its products to various independent Internet Retailers pursuant to written agreements referred to as Order Agreements. In this case, Massachusetts customers visited the websites of these Internet Retailers and purchased products from them. The Internet Retailers then bought these products from the Debtor, and instructed the Debtor to ship them directly to the Massachusetts consumer via common carrier, in order to streamline the delivery process. The Internet Retailers paid the Debtor's

2

shipping and handling costs to get these products to the Massachusetts consumer.  No contractual relationship existed between the Debtor and the Massachusetts consumer, and consumers made payments directly to the Internet Retailers.

By its appeal, Appellant contends that the Bankruptcy Court erred in sustaining the Debtor's objection to their $1.45 million "drop shipment" sales tax claim.  Appellant contends that the Debtor is liable for Massachusetts sales tax on products it sold and shipped to customers in Massachusetts under the definition of "retail sale" in Mass. Gen. Laws 64H § 1.  Specifically, Appellant contends that the Debtor functioned as "the agent" of the Internet Retailers for shipping purposes, or, in the alternative, that the Debtor retained possession for purposes of "redelivery" to Massachusetts consumers, thereby making the Debtor "a person for redelivery to a consumer" within the meaning of the statue.  Appellant also contends that the Bankruptcy Court erroneously applied the risk of loss provision in the Order Agreements to allow the Debtor to avoid the Massachusetts sales tax.  In addition, Appellant argues that the Bankruptcy Court's reliance on Steelcase, Inc. v. Crystal, 680 A.2d 289 (Conn. 1996) was erroneous, because the facts of that case are distinguishable and the Connecticut sales tax statute differs significantly from the Massachusetts sales tax statute.  Lastly, Appellant contends that any doubts as to the construction of the Massachusetts

3

statute should be resolved in favor of the interpretation provided by Appellant, as the agency charged with the administration of the statute.

In response, the Debtor contends that the Bankruptcy Court correctly found that the Debtor's "drop shipments" of products were delivered to Internet Retailers in California and not to the customers of those Internet Retailers in Massachusetts.  The Debtor contends that the Bankruptcy Court's interpretation is consistent with the title and risk of loss provisions of the Order Agreements, both of which provide that title and risk of loss passes to the Internet Retailers upon the Debtor's delivery of the products to the carrier at the point of shipment in California.  The Debtor also contends that the Bankruptcy Court correctly referred to the Uniform Commercial Code ("U.C.C.") to discern the meaning of the term "delivery" because that word is not defined in the Massachusetts sales tax statute.

## II.  STANDARD OF REVIEW

The Court has jurisdiction to hear an appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a).  In undertaking a review of the issues on appeal, the Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to its legal conclusions.  See Am. Flint Glass Workers Union v. Anchor Resolution Corp., 197 F.3d 76, 80 (3d Cir. 1999).  With mixed questions of law and fact, the Court must

4

accept the Bankruptcy Court's finding of "historical or narrative
facts unless clearly erroneous, but exercise[s] 'plenary review
of the trial court's choice and interpretation of legal precepts
and its application of those precepts to the historical facts.'"
Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635,
642 (3d Cir. 1991) (citing Universal Mineral, Inc. v. C.A. Hughes
& Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).  The appellate
responsibilities of the Court are further understood by the
jurisdiction exercised by the Third Circuit, which focuses and
reviews the Bankruptcy Court decision on a de novo basis in the
first instance.  In re Telegroup, 281 F.3d 133, 136 (3d Cir.
2002).

## III. DISCUSSION

Reviewing the decision of the Bankruptcy Court in light of
the applicable standard of review and the governing legal
principles, the Court concludes that the Bankruptcy Court did not
err in concluding that the Debtor was not responsible for the
payment of sales tax on the drop shipment transactions between
the Debtor and the Internet Retailers.  In pertinent part, the
Massachusetts sales tax statute provides:

> The delivery in the commonwealth of tangible
> personal property by an owner or former owner thereof,
> or by a factor, or agent of such owner, former owner or
> factor, if the delivery is to a consumer or to a person
> for redelivery to a consumer pursuant to a retail sale
> made by a retailer not engaged in business in the
> commonwealth, is a retail sale in the commonwealth by
> the person making the delivery.

Mass. Gen. Laws ch. 64H, § 1 (emphasis added).  Appellant
contends that the Debtor falls into the language "agent of the
owner" or "person for redelivery to a consumer," and therefore,
the Debtor is responsible for the sales tax on these
transactions.  The Court, however, agrees with the Bankruptcy
Court that the appropriate starting place for the analysis under
this section begins with the question of what constitutes a
"delivery."  The above provision is only triggered in the first
instance by "a delivery in the commonwealth."  As the Bankruptcy
Court noted the term "delivery" is not defined in the
Massachusetts sales tax statute.  Thus, the Court concludes that
the Bankruptcy Court correctly turned to the U.C.C. for guidance
as to the meaning of the term "delivery"[1] and correctly considered
the terms of the Order Agreements between the Debtor and the
Internet Retailers to conclude that the Debtor accomplished
"delivery" in California, because the transfer of title and risk
of loss provisions made clear that all shipments will be made
F.O.B. Debtor's shipping facility in California.  See Travenol
Laboratories, Inc. v. Zotal, Ltd., 474 N.E.2d 1070, 1074 (Mass.
1985) (recognizing that in an F.O.B. contract, the place of
delivery is ordinarily where the seller places the goods into the

---

[1]     See The Neiman Marcus Group, Inc. v. Commissioner of
Revenue, 2001 WL 1590444, *4 (Mass. App. Tax Bd. January 24,
2001); Circuit City Stores, Inc. v. Commissioner of Revenue, 790
N.E. 2d 636, 640 (Mass. 2003); see also Eusco, Inc. v.
Huddleston, 835 S.W.2d 576, 579 (Tenn. 1992).

hands of the carrier at the seller's place of business).

Appellant urges the Court to consider the physical circumstances of the delivery in this case, namely that the goods were in the Debtor's warehouse and the Debtor arranged for the shipment of the goods directly to the Massachusetts consumer. Appellant also contends that the assumption of the risk of loss is not controlling here and relies on Circuit City Stores v. Commissioner of Revenue, 790 N.E.2d 636 (Mass. 2003) to support its position.  The Circuit City decision presents a different factual scenario than the circumstances here; however, in the Court's view, Circuit City does not support Appellant's position and instead bolsters the position of the Debtor.  In Circuit City, the relevant question was when and where title passed from Circuit City to the customers in connection with merchandise purchased at one store, but picked up by the consumer at another store.  Id. at 639.  As the Bankruptcy Court did in this case, the Circuit City court turned to the provisions of the U.C.C. for guidance in discerning concepts not defined in the sales tax statute, like "title" and "delivery."  Id. at 640.  Further, the Circuit City court only analyzed the physical circumstances surrounding the delivery of the goods, because the parties did not have an explicit agreement with respect to the passage of title.  Id. (recognizing that under U.C.C. title passes to buyer at time and place at which seller completes his performance with

reference to physical delivery of goods, "unless otherwise explicitly agreed"). In this case, however, the parties had a specific agreement concerning the passage of title, and therefore, it was not necessary for the Bankruptcy Court to consider the physical circumstances regarding the delivery of the goods. Pursuant to the Order Agreements between the Debtors and the Internet Retailers, title passed to the Internet Retailers once the Debtor delivered the products to the California shipping point. Because the Debtor no longer had title to the products, the Court concludes that the Debtor could not make a sale or delivery of the products in Massachusetts.

The Court also concludes that the Bankruptcy Court did not err in considering the Connecticut Supreme Court's decision in Steelcase, Inc. v. Crystal, 680 A.2d 289 (Conn. 1996). The Court agrees with the Bankruptcy Court that the factual circumstances in that case are similar to the instant case, and the Court is not persuaded that the differences between the Massachusetts and Connecticut sales tax statutes are significant enough to render the Steelcase decision inapposite as persuasive authority.

**IV. CONCLUSION**

In sum, the Court agrees with the rationale espoused by the Bankruptcy Court in its December 29, 2004 Memorandum Opinion and concludes that the Bankruptcy Court did not err in concluding that the Debtors are not liable for sale tax as a result of the

8

drop shipment transactions between the Debtor and various Internet Retailers.  Accordingly, the Court will affirm the January 13, 2005 Order of the Bankruptcy Court.[2]

An appropriate Order will be entered.

---

[2]      The Debtor's Liquidating Trustee has also filed a Motion For Leave To File A Sur-Reply Brief, and Appellant has filed an opposition to the Motion.  Each of the issues addressed in the Sur-Reply were properly raised by Appellant in its Opening Brief, and the Court does not find the Sur-Reply to be necessary to respond to any new arguments raised for the first time in Appellant's Reply Brief.  Accordingly, the Court will deny the Motion For Leave To File A Sur-Reply Brief In Response To Appellant's Reply Brief filed by the Debtor's Liquidating Trustee.