**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
——————

No. 06-2163
——————

IN RE:

VALLEY MEDIA, INC.,
Debtor

COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF REVENUE,
Appellant
——————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
D.C. Civil No. 05-cv-00179
District Judge:  The Honorable Joseph J. Farnan, Jr.
——————

Submitted Under Third Circuit LAR 34.1(a)
January 29, 2007
——————

Before: BARRY, ROTH, <u>Circuit Judges</u>, and DEBEVOISE,[*] <u>District Judge</u>

(Opinion Filed February 23, 2007)
——————

OPINION
——————

————————————

[*] The Honorable Dickinson R. Debevoise, Senior District Judge, United States District
Court for the District of New Jersey, sitting by designation.

BARRY, <u>Circuit Judge</u>

The Massachusetts Department of Revenue ("MDOR") appeals from the District Court's order affirming an order of the Bankruptcy Court in which that Court sustained the objection of debtor Valley Media, Inc. ("Valley Media") to a claim for sales tax on its drop shipments to Massachusetts customers. We will affirm.

Because we write only for the parties, who are already familiar with the facts of this case, we will restate those facts only as necessary for our analysis. Valley Media, based in Woodland, California, was a wholesale music and video distributor. As part of its wholesale music distribution business, Valley Media contracted with various internet vendors to fulfill retail contracts the internet vendors had with Massachusetts customers through what are known as "drop shipments." The drop shipment transactions involved three parties and two separate contracts. A customer, from Massachusetts in this case, would order a product from an internet vendor. Internet vendors were not subject to taxation by Massachusetts. In turn, the internet vendor would order the products from Valley Media pursuant to a preexisting Order Agreement between Valley Media and the internet vendor. Pursuant to the Order Agreement, Valley Media would then ship the products from its California location directly to the Massachusetts customer.

MDOR claims that Valley Media was obligated to collect sales tax on these transactions because the Massachusetts tax code's definition of "retail sale" subject to the sales tax stated that:

The *delivery in the commonwealth* of tangible personal property by an

2

> owner or former owner thereof, or by a factor, or agent or such owner,
> former owner or factor, *if the delivery is to a consumer* or to a person for
> redelivery to a customer, *pursuant to a retail sale made by a retailer not
> engaged in business in the commonwealth*, *is a retail sale in the
> commonwealth by the person making the delivery.*

Mass. G.L. c. 64H, § 1 (emphasis added) (2000). Simply put, MDOR seeks to tax those

who deliver goods to customers in Massachusetts pursuant to sales by retailers that

Massachusetts cannot otherwise tax. MDOR audited Valley Media and determined that

Valley Media owed sales tax on the drop shipments from January 1, 1997 to December

31, 2000. The total disputed tax amount (not including interest and penalties) is

$1,462,703.

When Valley Media filed for Chapter 11 bankruptcy in November 2001, MDOR

filed a proof of claim with the Bankruptcy Court for unpaid taxes, including the sales tax

on the drop shipments. Valley Media objected to the claim. The Bankruptcy Court

sustained Valley Media's objection relating to the tax on the drop shipments. *See In re:

Valley Media*, 2004 Bankr. LEXIS 2061 (D. Del.). MDOR appealed to the District Court,

and the District Court affirmed. *Massachusetts Dep't of Revenue v. Valley Media, Inc.

(In re: Valley Media, Inc.)*, 338 B.R. 605, 608 (D. Del. 2006). MDOR again appeals, this

time to us.

MDOR presents one issue on appeal: whether the District Court erred in

interpreting the sales tax statute by relying on the Uniform Commercial Code ("UCC")

and the parties' agreements to determine that the drop shipments at issue here were not

subject to the tax. Valley Media asserts that the Bankruptcy Court and the District Court

3

were correct, but if they were not, and the transactions were subject to the tax, the tax is unconstitutional under the "dormant" or "negative" Commerce Clause. Because we find that the UCC and the parties' agreements are determinative of the issue, we need not reach Valley Media's constitutional claim.

## I.

The Bankruptcy Court had jurisdiction under 11 U.S.C. § 502, which encompasses jurisdiction to "determine the amount or legality of any tax" under 11 U.S.C. § 505. The District Court had appellate jurisdiction under 28 U.S.C. § 158(a), and we have jurisdiction over the District Court's order under § 158(d).

We exercise plenary review of statutory interpretations and conclusions of law, *Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough)*, 461 F.3d 406, 409 (3d Cir. 2006), and review findings of fact for clear error. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 334 (3d Cir. 2006).

## II.

State law determines the validity of creditors' claims in bankruptcy. *Grogan v. Gardner*, 498 U.S. 279, 283 (1991); *see also Cohen v. KB Mezzanine Fund II, LP (In re SubMicron Sys. Corp.)*, 432 F.3d 448, 458 (3d Cir. 2006) ("In determining whether claims asserted by creditors in bankruptcy are secured, state law applies."). Under Massachusetts law, a taxpayer bears the burden of "proving as a matter of law" an objection to the assessment of tax. *See Boston Prof'l Hockey Ass'n v. Comm'r of Revenue*, 820 N.E.2d 792, 799 (Mass. 2005) (internal quotes omitted).

4

Massachusetts imposes a tax on "sales at retail in the commonwealth[.]"  Mass. G.L. c. 64G, § 2.  "Sales at retail" include a "delivery" in Massachusetts of personal property by the owner or former owner "pursuant to a retail sale" by a retail vendor not engaged in business in Massachusetts.  Mass. G.L. c. 64G, § 1.  Both parties agree that the internet vendors were retailers not engaged in business in Massachusetts.  A "sale" is "any transfer of title or possession, or both . . . of tangible personal property . . . for a consideration, in any manner or by any means whatsoever[.]"  *Id.*  MDOR argues that Valley Media, because of the agreements with the internet vendors, was the former owner of the products and/or an agent of the new owners (the internet vendors), and that they "delivered" those products to customers in Massachusetts.  Therefore, MDOR claims that Valley Media was bound by the tax.  Valley Media contends that "delivery" occurred in California, when the goods were shipped "F.O.B." Valley Media's warehouse, and that, therefore, the sales tax statute does not apply.

Massachusetts courts determine a statute's meaning "from all its parts and from the subject matter to which it relates," and interpret a statute "so as to render [it] effective, consonant with reason and common sense."  *Cote-Whitacre v. Dep't of Public Health*, 844 N.E.2d 623, 635 (2006).  MDOR contends that the meaning of "delivery" within the sales tax statute is unambiguous, and thus the District Court did not need to look to the UCC or to the agreements of the parties to define the term.  MDOR's argument, simply stated, is that "delivery" occurs when the customers in Massachusetts receive their goods. MDOR contends that the UCC was only intended to clarify the rights of parties in

commercial transactions, and was not intended to override other definitions of "sale" for regulatory purposes. Valley Media asserts that because "delivery" is undefined in the sales tax statute, the District Court properly looked to the UCC for help in interpreting the term and determining the relevant facts.

To the extent that "delivery" is a term with a "well-defined meaning or common usage" outside of the scope of the sales tax statute, the District Court did not need to defer to MDOR's interpretation. *See National Muffler Dealers Ass'n, Inc. v. United States*, 440 U.S. 472, 476 (1979). "Delivery" has a well-defined meaning and common usage within the context of sales transactions under the UCC. *See* Mass. G.L. ch. 106, §§ 2-308 (addressing rights of party to specify "place for delivery"); 2-319 (addressing definitions of terms "F.O.B." and "F.A.S."); 2-401 (title passes upon terms "agreed upon by the parties" or upon "physical delivery" of goods at agreed upon location, including "at the time and place of shipment"). As Massachusetts was seeking to tax transactions regulated by Article II of the UCC, it can be presumed that the Massachusetts legislature intended to give "delivery" its "usual and accepted meaning." *See Commonwealth v. Morasse*, 842 N.E.2d 909, 912 (Mass. 2006) (stating that Massachusetts courts will ascertain the meaning of words from "their use in other legal contexts and dictionary definitions."). The Supreme Judicial Court of Massachusetts itself has adopted this approach. *See Circuit City Stores, Inc. v. Comm'r of Revenue*, 790 N.E.2d 636, 640 (Mass. 2003) ("Our tax statutes provide no explicit definition of the term 'title,' and so we look for guidance to the [UCC.]"). If the Supreme Judicial Court of Massachusetts will look to the UCC to

6

ascertain the meaning of terms in the tax code, there is no reason a federal court seeking to interpret state law should not also do so.

MDOR cites *Circuit City* for the proposition that a risk of loss provision should not be controlling as to the issue of taxability. But the discussion of the issue in *Circuit City* focused on whether the passage of title for the goods was affected by the retailer's retention of the risk of loss. *Id.* at 642. The Supreme Judicial Court held that title passed "irrespective" of the risk of loss upon identification of the goods to the contract. *Id.* at 642 n.13. The District Court found that both title and risk of loss passed from Valley Media upon transfer of the products to the carrier in California, as per the particular Order Agreement. *See Valley Media*, 338 B.R. at 607. Even if risk of loss was not relevant to the issue or illusory, as Massachusetts alleges, so long as title to the goods passed in California, delivery was not made in Massachusetts by Valley Media.

We have considered the remainder of MDOR's arguments and conclude that they are without merit. Valley Media delivered the goods to the internet vendors in California when the goods were shipped F.O.B. Despite MDOR's claims, this is not a "delivery in the commonwealth" subject to the Massachusetts sales tax.

## III.

The order of the District Court will be affirmed.